Jack **ENGLISH**, Sandra **Rushing**, and DeMona **Ross**, Plaintiffs,

v.

**GENERAL DEVELOPMENT CORPORATION**, and Gina Battaglia, Defendants.

No. 88 C 9735.

United States District Court, N.D. Illinois, E.D.

Aug. 15, 1989.

---

Jeffrey L. Taren, Kinoy, Taren, Geraghty & Potter, Chicago, Ill., for plaintiffs.

James W. Gladden, Jr., David B. Ritter, Mayer, Brown & Platt, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

On July 13, 1989, this court gave Jack English, Sandra Rushing, and DeMona Ross leave to amend their complaint, one which they originally filed in November 1988. The amended complaint sought damages and other relief from General Development Corporation and its Senior Marketing Manager, Gina Battaglia, for violating 42 U.S.C. § 1981 and §§ 2000e et seq. (1982). At the time that the court granted the plaintiffs leave to amend, pending before the court was the defendants' motion to dismiss the plaintiffs' § 1981 claims. The defendants argued that the recent decision in *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), drastically limited the scope of § 1981, such that the plaintiffs could no longer seek relief under that statute. Apparently the plaintiffs agreed, for the plaintiffs' new § 1981 counts were significantly different from those filed in 1988.

At the time the plaintiffs presented their motion to amend their complaint to this court, all of the parties and the court were aware of the defendants' motion. Nevertheless, the defendants agreed to stand on their motion, and informed the court that they would adhere to a previously set schedule for briefing the motion. Because of a miscommunication, however, the court denied the defendants' motion prior to receiving the defendants' reply brief—an unfortunate circumstance for the defendants, as this reply brief was their first shot at the plaintiffs' new complaint.

The court will now reconsider its decision in light of the defendants' reply. First the court will reprint its earlier decision, omitting only its discussion of the posture of the defendants' motion:

This is the first time that this court has had to gauge the effect of *Patterson* upon § 1981 cases pending before this court. Two points which are pertinent to the present motion are clear from the decision. First, § 1981 continues to prohibit racial discrimination in the making

and enforcement of private contracts. Second, the prohibition against discrimination in the making of contracts applies only at the time of formation of a contract, and not to "problems that may arise later from the conditions of continuing employment." *Patterson*, 109 S.Ct. at 2369–70, 2372–73. Plaintiffs thus must draw a link between discrimination at the time of contract formation and the harm suffered in order to state a claim under this portion of § 1981.

This said, the plaintiffs sufficiently allege § 1981 claims. Plaintiff Ross alleges that at the time the defendants hired her, they were unwilling to enter into a nondiscriminatory employment contract with black individuals. As a result of this unwillingness, Ross—who is black—was forced to quit. See Amended Complaint, ¶¶ 1, 4, 11, 16. Ross has alleged the link between the defendants' policy at the time they hired Ross and the harm which she suffered, and so she can proceed with her § 1981 claim.

English and Rushing provide the link which *Patterson* requires twice over. First, they allege that their protests against the defendants' policy of not contracting with black persons resulted in their discharge. Amended Complaint at ¶ 12. The federal courts have held repeatedly that a person who is fired in retaliation for protesting conduct prohibited by § 1981 can himself or herself seek relief under § 1981. See, for example, *Winston v. Lear–Siegler, Inc.*, 558 F.2d 1266, 1268–70 (6th Cir.1977); *Goff v. Continental Oil Co.*, 678 F.2d 593, 598–99 (5th Cir.1982); *Pinkard v. Pullman–Standard, A Div. of Pullman, Inc.*, 678 F.2d 1211, 1229 n. 15 (5th Cir. Unit B 1982); *Garcia v. Rush Presbyterian St. Luke's Medical Ctr.*, 80 F.R.D. 254, 265–66 (N.D.Ill.1978). While *Patterson* would have dampened the exuberance reflected in these opinions had the courts considered it, the policy supporting relief for those suffering from retaliation un-

der § 1981 is still good, and *Patterson* leaves it untouched.

The defendants' method of compensating English and Rushing provides the second link between their allegedly illegal policy and harm to English and Rushing. Both of these plaintiffs received commissions based on sales of persons whom they supervised. See Amended Complaint at ¶ 14. The defendants' policy thus could have directly reduced English and Rushing's earnings. This gives them yet another interest in seeing to it that the defendants' illegal policy ends.

For these reasons, the defendants' motion to dismiss the plaintiffs' § 1981 claims is denied.

Now for the defendants' arguments in reply. The defendants submit at various points in their brief that the plaintiffs are trying to deceive the court by reworking their § 1981 claims. The defendants go so far as to append to their brief a line-by-line comparision of the plaintiffs' complaints to make apparent to the court what the plaintiffs openly admitted in opposing the defendants' motion: *Patterson* changes the way plaintiffs traditionally have approached § 1981.

■ Perhaps the plaintiffs have reworked their case. Maybe the parties will have to reopen discovery as a result. But these points are irrelevant to the present motion.[1] The only time that a court may dismiss a claim under Rule 12(b)(6) Fed.R. Civ.P., is when "it appears beyond doubt that the plaintiff can prove no set of facts to support his claims that would entitle him to relief." This standard is stringent, and in applying it, the court "must resolve all reasonable inferences in the plaintiff's favor." *Rutan v. Republican Party of Illinois*, 868 F.2d 943, 954 (7th Cir.1989).

■ The court will first reassess DeMona Ross's claims for relief. As noted earlier, the plaintiffs allege that the defendants were unwilling to enter into non-discriminatory employment relationships with black

---

**1.** If it had appeared to the court that the amended complaint seriously prejudiced the defendants, it would not have granted them leave to amend. The proper time for such arguments is at the time of amendment, not on proceedings on a motion under Rule 12(b)(6), Fed.R.Civ.P.

persons in May–June 1987. Ross, who is black, joined General Development during this time, but because of the defendants' alleged policy, she was forced to quit.

The defendants attack Ross's claim in a number of ways. They first assert that Judge Hart dismissed an identical claim in *Dangerfield v. The Mission Press*, No. 88 C 7199, mem. op. at 3–4 (N.D.Ill.1989). The defendants ignore, however, the language of *Dangerfield* plaintiffs' complaint, which asserted that The Mission Press "harassed them because of their race, and condoned and fostered a 'racially hostile atmosphere.'" *Id.* at 2–3. The *Dangerfield* plaintiffs did not plead, unlike Ross, that a practice prohibited by § 1981 was in force at the time of their hiring. *Dangerfield* thus does not control the present motion.[2]

The defendants next contend that Ross gave an entirely different motivation for her leaving General Development in her original complaint. This is true, but it does not mean that her present complaint does not state a claim upon which this court can grant relief. The defendants are free to use Ross's equivocation to their advantage on a motion for summary judgment or at trial,[3] but it has no bearing on the present motion.

The defendants' most substantive attack on Ross's § 1981 claim is that it is an impermissible attempt to avoid *Patterson*, as much of Ross's amended § 1981 claim reads as challenging the defendants' conduct after Ross entered into an employment relationship with General Development. See especially Amended Complaint at ¶ 11. The defendants echo the concern expressed by Judge Hart in *Dangerfield:* a plaintiff who claims to use post-formation conduct to establish only pre-formation discrimination could end up proving too much.

The defendants' remedy for this situation—dismissing Ross's claims altogether—is too drastic, and unwarranted even after *Patterson*. The *Patterson* majority did reject Justice Brennan's suggestion that a plaintiff could seek redress under § 1981 when the defendant's post-formation conduct is "'sufficiently severe or pervasive as effectively to belie any claim that the contract was entered into in a racially neutral manner.'" *Patterson*, 109 S.Ct. at 2376, quoting *id.* at 2389 (Brennan, concurring in part and dissenting in part). But the Court further held that a plaintiff could use post-formation conduct to attribute "a divergence in the explicit terms of particular contracts" to racial animus.

> Thus, for example, if a potential employee is offered (and accepts) a contract to do a job for less money than others doing like work, evidence of racial harassment may show that the employer, at the time of formation, was unwilling to enter into a nondiscriminatory contract. However, and this is the crucial point, the question under § 1981 remains whether the employer, *at the time of the formation of the contract* in fact intentionally refused to enter into a contract with the employer on racially neutral terms.

*Id.* at 2376–77 (emphasis in original).

The Court's example in *Patterson* was exactly that: an example. It does not exhaust the possible different terms which employers could place in their contracts, nor does it limit the types of post-formation conduct which the plaintiff could use to demonstrate the motivation for the different term. See *Patterson v. McLean Credit Union*, 805 F.2d 1143, 1145–46 (4th Cir. 1986) (racial harrassment, standing alone, does not abridge right to make contracts free from racial discrimination, but it may be probative of discriminatory intent re-

---

**2.** Other cases to which the defendants refer in a supplement to their reply brief are similarly inapposite. See *Conley v. University of Chicago,* 1989 WL 84156, 1989 U.S.Dist. LEXIS 8590 (N.D.Ill. July 13, 1989) (dismissing § 1981 claims; complaint in case (attached to supplement as Appendix C) did not allege policy in violation of § 1981 in effect at time of plaintiff's hiring); *Williams v. National Railroad Passenger Corporation,* 716 F.Supp. 49 (D.D.C.1989) (grant-

ing summary judgment against plaintiff on her § 1981 claim for failure to prove discrimination at time of contract formation, or circumstances that indicated that a new, distinct contract relation was formed after original hiring).

**3.** They also have leave to conduct additional discovery on the new issues raised in the amended complaint.

quired in § 1981 action); *Patterson,* 109 S.Ct. at 2376 n. 5 (approvingly noting Fourth Circuit's comment as to evidentiary value of post-formation conduct). *Dangerfield's* concern that allowing evidence of post-formation conduct would .subvert *Patterson* should be no more than a concern, one that should inform the court's review of evidence and its decision as to whether the plaintiff has proved a violation of § 1981. Were the courts to overemphasize the concern expressed in *Dangerfield,* employers would be free to disguise discrimination at the time of contract formation until after the employer has hired the employee. Through such machinations, the employer would be able to escape damages liability for acts prohibited by § 1981, even post-*Patterson.*

It is too early for the court to determine which post-formation conduct it will admit as evidence of the defendants' alleged discrimination in the making of their contract with Ross. The amended complaint asserts several allegedly discriminatory provisions in Ross's employment contract. Some of these provisions, upon closer examination and discovery, may not be terms of Ross's employment contract, or else may not be discriminatory. See, for example, Amended Complaint at ¶ 1 (suggesting that Ross's employment contract contained discriminatory provisions as to the scheduling of appointments and marketing to blacks); *id.* at ¶ 11 (alleging that contract contained discriminatory provisions as to recruitment of other black employees); *id.* at ¶ 16 (alleging that white employees English and Rushing had same contract provision as Ross regarding recruitment of blacks). What the court stated in its earlier order stands: *Patterson* will force Ross to demonstrate a link between the defendants' conduct at the time they hired her and the harms she suffered. She also will have to indicate which contractual provisions are discriminatory, and how post-formation acts are relevant to showing the impetus for those provisions. Nevertheless, that Ross will have a greater burden in proving her § 1981 claim does not prevent her from asserting the claim, which is the only question presently before the court. Ross has

stated a claim, and thus this court will not dismiss it.

■ The court now turns to English and Rushing's claims. The defendants first contend that the plaintiffs have reworked these claims solely to circumvent *Patterson,* much as Ross allegedly tried to do. The court stated above that it would not allow the plaintiffs to "subvert" *Patterson,* but they may use evidence of post-formation conduct to prove discrimination at the time of contract formation. This holds true for English and Rushing as well as Ross.

The defendants next contend that *Patterson* has ruled out claims by those alleging discharge in retaliation for protesting policies made illegal under § 1981. They refer the court first to *Dangerfield,* where Judge Hart rejected the argument that retaliatory discharge interferes with a person's right to enforce a contract—a right which § 1981 protects. Judge Hart noted that the *Dangerfield* plaintiffs' discharge did not impair their right to enforce their contracts, and thus the plaintiffs did not state a claim. *Dangerfield,* mem. op. at 3. The defendants also refer the court to *Woods v. Miles Pharmaceuticals,* No. 87 C 4944, mem. op. 1–2, 1989 WL 76171 (N.D. Ill. July 6, 1989), where Judge Shadur dismissed on his own initiative John Woods III's claims under § 1981 that Miles Pharmaceuticals discharged him in part to retaliate against Woods's "complaining of discriminatory and illegal practices" of Miles. See Defendants' Reply Brief, App. B (Woods's Second Amended Complaint).

Neither of these cases controls the court's decision here. Judge Hart in *Dangerfield* addressed and properly rejected a claim that an employer's policy affected his employees' right to *enforce* contracts, not make them. As for *Woods,* the plaintiff there never specified which practice he protested, and on account of Judge Shadur's decision to dismiss the case sua sponte, the plaintiff never presented the court with the argument which English and Rushing present here: namely, that § 1981 gives persons a cause of action for suffering harm on account of protesting policies

squarely prohibited by § 1981. The defendants have not pointed to anything which undercuts the wisdom of the decisions which this court cited in its earlier opinion that persons have such a right of action under federal law. While it is true that a retaliatory discharge cannot occur unless a contract has been formed, and thus is always in a sense post-formation conduct, the defendants focus on the wrong contract which is relevant to English and Rushing's claims. English and Rushing allege that the defendants fired them for their protests against the defendants' conduct before the formation of contracts with other employees, not their own employment contracts.[4]

The defendants argue nevertheless that in addition to barring claims under § 1981 for discrimination occurring after formation of a contract, *Patterson* limits the class of persons who may sue for redress of discrimination under that statute. The defendants base this argument on the Court's acknowledgment that there was evidence that other blacks besides Patterson may have suffered discrimination, and the Court's three uses of the word "her" in describing what Patterson had not proved. See *Patterson*, 109 S.Ct. at 2373 n. 2, 2374 ("none of the conduct which petitioner alleges as part of the racial harassment ... involves either a refusal to make a contract with *her* or the impairment of *her* ability to enforce *her* established contract rights) (emphasis added).

While this court is loath to rely on dissenting opinions in the Supreme Court to determine the opinion of the Court's majority, it is remarkable that given the many decisions which have held that third parties may bring suit to redress harms to persons denied their rights under § 1981—some of which this court cited in its earlier decision—the *Patterson* dissenters never chided the majority for remaking the law on standing in suits under § 1981. The question of standing does not appear in the Fourth Circuit's opinion in the case, see *Patterson*, 805 F.2d at 1143, nor did the *Patterson* parties petition the Supreme Court for review of this question, see Brief for Petitioner, *Patterson v. McLean Credit Union*, No. 87–107, 1–2 (U.S. Dec. 3, 1987); Brief for Respondent, *Patterson v. McLean Credit Union*, No. 87–107, 1–2 (U.S. Jan 12, 1988). *Patterson* thus does not cast doubt on the many cases which have held that persons in English and Rushing's position can maintain suit for a defendant's refusal to contract on racially neutral grounds with other persons.

The court is aware of the tendency both in the current Supreme Court and among litigants to claim that every civil rights decision rendered these days recreates the entire landscape of civil rights law. Such may be the effect of cases like *Patterson*. Indeed, *Patterson* ultimately may prove fatal to English, Rushing, and Ross's claims

---

**4.** The defendants in their supplemental brief cite two additional cases. The first, *Gonzalez v. The Home Insurance Company*, 1989 U.S. Dist. LEXIS 8733 (S.D.N.Y. July 28, 1989), is not persuasive. The *Gonzalez* plaintiffs were agents of the Home Insurance Company. They contended that they suffered from the company's racial discrimination by virtue of the Company's refusal to approve insurance contracts submitted to the company by the plaintiffs. The court rejected the plaintiff's argument, reasoning that since they were agents of a disclosed principal, they could not be parties to the insurance company's contracts with third parties. The company's refusal to enter contracts with third parties on a racially neutral basis thus "did not impair plaintiffs' right to make a contract." *Id.* at 8733, 9. The *Gonzalez* plaintiffs did not submit to the court, however, the argument which English and Rushing present here, that the defendants' policy of refusing to contract

with black persons in a racially neutral fashion resulted in direct harm to them. If *Gonzalez* stands for the proposition that persons in English and Rushing's position cannot seek relief under § 1981, this court rejects *Gonzalez*, as it is contrary to a line of established cases holding that persons harmed as a result of racial discrimination directed at others may sue under § 1981. See the cases cited in this court's earlier opinion.

The second case cited is *Williams*. There the court entered summary judgment against the plaintiff on her claims of retaliatory discharge under § 1981. The court did not reject the plaintiff's contention that retaliatory discharge was actionable under § 1981, however: the court merely held that Williams's employer did not have a policy which violated § 1981, and so Williams could not have been fired for protesting against such a policy. See *Williams*, 716 F.Supp. at 51.

under § 1981. But suggestions by dissenters on the Court or the public at large that a decision is "significant" should not cause the courts to ignore the standards which should govern their analysis of particular motions. Today the court reiterates its conclusion that the plaintiffs' amended complaint states a claim for relief. The decision whether they are entitled to that relief in the post-*Patterson* era is left for another day.

The defendants' motion to dismiss the plaintiffs' § 1981 claims is denied.