724 F.Supp. 1279 (1989)
Joyce MALEKIAN, Plaintiff,
v.
POTTERY CLUB OF AURORA, INC., a Colorado corporation, Robert Hogan, and Charles Hicks, Defendants.
Civ. A. No. 89-B-632.
United States District Court, D. Colorado.
November 9, 1989.
*1280 John R. Holland, Kim L. Morris and Demian Smith, Law Offices of John Robert Holland, Denver, Colo., for Joyce Malekian.
Jon Sands, Bostrom, Haring & Hitt, Denver, Colo., for Pottery Club of Aurora, Inc.
Gregg C. McReynolds and Craig S. Nuss, Anderson, Campbell and Laugesen, P.C., and Stanislaw S. Damas, Damas and Associates, Denver, Colo., for Robert Hogan.

MEMORANDUM OPINION AND ORDER
BABCOCK, District Judge.
This matter is before the Court on two motions to dismiss plaintiff's second and third claims for relief filed by defendants Pottery Club of Aurora, Inc. and Robert Hogan. Plaintiff brings this action alleging that she suffered verbal abuse and termination based upon racial/sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and 42 U.S.C. § 1981. Plaintiff also asserts a pendent state claim against Pottery Club and Hogan for outrageous conduct. For the reasons set forth below, defendants' motions to dismiss are granted.
In considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the district court should construe the allegations in the complaint favorably to the pleader and accept as true all well-plead facts in the complaint. Schueur v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal of a claim is improper unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle him or her to relief. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).
Defendants argue that the Supreme Court's recent decision in Patterson v. McClean Credit Union, ___ U.S. ___, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), mandates dismissal of plaintiff's § 1981 claim (second claim for relief) against them. In Patterson, the Supreme Court held that § 1981 does not support a claim for racial harassment in the workplace. "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." Id. at 2372. Although, as plaintiff correctly notes, Patterson does not address specifically the issue of whether an alleged discriminatory discharge is actionable under § 1981, I and several other district judges have addressed this question since the Supreme Court's decision. See Rivera v. AT & T Information Systems, Inc., 719 F.Supp. 962 (D.Colo.1989); Hall v. Cook County, 719 F.Supp. 721 (N.D.Ill.1989); Morgan v. Kansas City Area Transportation Authority, 720 F.Supp. 758 (W.D.Mo. 1989); Greggs v. Hillman Distributing Co., 719 F.Supp. 552 (S.D.Tex.1989).
Reading § 1981 not as a general proscription of racial discrimination in all aspects of contractual relations, but as limited to the enumerated rights within its express protection, specifically the right to make and enforce contracts, I reaffirm my belief that racially motivated termination from employment is beyond the scope of § 1981 as construed in Patterson.
Here, plaintiff alleges that Hogan "repeatedly harassed [her] and engaged in a pattern of abusive and racially derogatory remarks directed at [her] ... [and that he] repeatedly exhibited racial prejudice, inquiring about `what color' job applicants were and voicing unfounded suspicions that black employees were stealing from his store." Plaintiff further alleges in her complaint that she was summarily and wrongfully terminated based upon "constitutionally impermissible racial and sexual considerations." Nowhere in her complaint, however, does plaintiff allege that defendants discriminated against her when they entered into the employment relationship or that defendants impaired her ability to enforce through the legal process her established contract rights. Accordingly, I conclude that Patterson requires that plaintiff's § 1981 claim be dismissed.
Alternatively, plaintiff argues that she should be granted leave to amend her § 1981 claim to allege a link between discrimination *1281 occurring at the time of the contract formation and the harm she suffered. Plaintiff premises her argument on the holding in English v. General Development Corp., 717 F.Supp. 628 (N.D.Ill.1989).
In English v. General Development Corp., supra, discharged employees brought an action against their former employer seeking damages and other relief for violations of Title VII and § 1981. Plaintiffs alleged that the defendants were unwilling to enter into non-discriminatory employment relationships with black persons during a specified period of time. One of the plaintiffs, who began working for the defendant company during the specified period, alleged that she was forced to quit because of the defendants' alleged discriminatory policy. The Court held that plaintiffs sufficiently stated a claim for relief under § 1981 and that under Patterson, the plaintiffs could use evidence of post-contract formation conduct to prove discrimination at the time the contract was entered into.
The English court relied on the Supreme Court's statement in Patterson that, "[w]e agree that racial harassment may be used as evidence that a divergence in the explicit terms of particular contract is explained by racial animus." Patterson, 109 S.Ct. at 2376. The Supreme Court continued:
Thus, for example, if a potential employee is offered (and accepts) a contract to do a job for less money than others doing like work, evidence of racial harassment may show that the employer, at the time of formation, was unwilling to enter into a nondiscriminatory contract. However, and this is the critical point, the question under § 1981 remains whether the employer, at the time of the formation of the contract, in fact intentionally refused to enter into a contract with the employee on racially neutral terms. The plaintiff's ability to plead that the racial harassment is `severe or pervasive' should not allow him to bootstrap a challenge to the conditions of employment (actionable, if at all, under Title VII) into a claim under § 1981 that the employer refused to offer the petitioner the `same right to ... make' a contract. We think it clear that the conduct challenged by petitioner related not to her employer's refusal to enter into a contract with her, but rather to the conditions of her employment.
Patterson, 109 S.Ct. at 2376-77.
Based upon the language in Patterson, I decline to follow the holding in English. Under Patterson, post contract formation conduct may be used as evidence to prove that discrimination existed at the time of contract formation. However, allegations of post contract formation conduct do not state a claim for relief under § 1981.
Moreover, where, as here, plaintiff has asserted adequately a claim for relief under Title VII, she is not without legal recourse, and justice does not require that plaintiff be allowed leave to amend her complaint. Fed.R.Civ.P. 15(a).
Plaintiff further contends that Patterson should not be applied retroactively to her case. I disagree.
Applying the Supreme Court's test for retroactivity, see Chevron Oil Company v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), to the facts of this case, I find no special, equitable reason to depart from the general rule in favor of applying new judicial decisions to pending cases. The Supreme Court's decision in Patterson does not announce a new rule of law, but clarifies the application of § 1981. Retroactive application of the Patterson rule will not impose on plaintiff injustice or hardship, since she may still pursue her claim under Title VII.
Finally, in my discretion, I decline to exercise pendent jurisdiction over plaintiff's outrageous conduct claim. Because Title VII claims are tried to the Court and the claim for outrageous conduct would be tried to a jury, consideration of the outrageous conduct claim in conjunction with plaintiff's Title VII claim may lead to jury confusion. United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Moreover, consideration of this state law claim would interfere with the purpose and remedies *1282 Congress provided for in Title VII." Chavez v. Guaranty Bank and Trust Company, 607 F.Supp. 484, 485 (D.Colo.1985).
Accordingly, it is ORDERED that defendants' motions to dismiss plaintiff's claim for relief under § 1981 are GRANTED and the same is hereby dismissed with prejudice.
It is FURTHER ORDERED that defendants' motions to severe plaintiff's state law claim for outrageous conduct is GRANTED.