**Orbie COLEMAN, Plaintiff,**

v.

**DOW CHEMICAL COMPANY, et al., Defendants.**

**Civ. No. H 86–259 (TEC).**

United States District Court,
D. Connecticut.

March 16, 1990.

Garrison, Kahn, Silbert & Arterton, New Haven, Conn., for plaintiff.

Lynch, Traub, Keefe & Errante, New Haven, Conn., for defendant, Dow Chemical Co.

Pullman, Comley, Bradley & Reeves, Williams, Cooney & Sheehy, Bridgeport, Conn., for defendant, Robert Raymond.

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

CLARIE, Senior District Judge.

The plaintiff, a black citizen, originally filed this action on March 13, 1986; his second amended complaint alleges that defendants Robert Raymond and Dow Chemical Company violated Title 42 U.S.C. § 1981, and that Dow also violated Title VII (42 U.S.C. §§ 2000e–2 and 2000e–3), by discriminating against him on the basis of his race. He claims to have been: 1) denied promotional opportunities; 2) subjected to racial harassment and denied equal pay and equal treatment; and 3) retaliated against for having filed a race discrimination claim with the Equal Employment Opportunities Commission. Discovery having been completed, both defendants moved for summary judgment on all counts. The defendants' motions are granted in part, on the § 1981 harassment and equal treatment claims in Count Three; however, because material facts remain in dispute concerning the plaintiff's other claims, the defendants' motions are denied.

## I. BACKGROUND

Plaintiff Orbie Coleman ("Coleman"), a black citizen, has been employed by Defendant Dow Chemical Company ("Dow") at its Allyn's Point plant in Gales Ferry, Connecticut since September 1971. He has continuously worked in the plant services or maintenance department since July 1973. Coleman's first assignment in that department was as a maintenance technician trainee, and thereafter he was promoted to maintenance technician in November 1975, and to senior maintenance technician, the highest non-supervisory position in that department, in May 1978. Coleman's abilities and desire for advancement were recognized by Dow, and he was highly rated within his department.

In 1982, defendant Robert Raymond ("Raymond") became Coleman's supervisor in the maintenance department. In 1984, Raymond brought to the attention of Plant Manager John Oberlatz the vacancy of a supervisory position in the maintenance department, and recommended Eugene Laroux, a white male, for that position. Oberlatz had final decision-making authority over that promotion decision; however, Raymond's evaluation of job performance was a factor which Oberlatz considered

when making that decision. On January 28, 1985, Oberlatz promoted Laroux to the position of supervisor.

On April 8, 1985, Coleman filed a complaint with the United States Equal Opportunity Commission ("EEOC") alleging that he been discriminated against by Dow because of his race. He claimed that he had been denied promotional opportunities, received differential pay, and been subjected to physical and verbal abuse because of his race. Coleman's performance evaluation ranking within the maintenance department declined from 6th of 22 employees in 1985 to 16th of 20 in 1989.

On March 13, 1986, Coleman filed the present lawsuit. In his second amended complaint, Coleman alleges that Raymond and Dow violated 42 U.S.C. § 1981 [1], and also that Dow violated Title VII of the 1964 Civil Rights Act, 42 U.S.C. §§ 2000e–2 and 2000e–3,[2] by discriminating against him because of his race, in the following ways:

1. denial of promotional opportunities (Counts One and Two);

2. Raymond subjecting Coleman to, and Dow permitting Coleman to be subjected to, racial harassment; and denial to him equal terms of employment and equal pay (Count Three); and

3. evaluating Coleman's performance as inferior, in retaliation for filing a race discrimination complaint with the EEOC (Count Four).

In 1986, Dow promoted Chris Kulaga, a white male, to the position of supervisor in the Styrofoam Department; and in 1988, in the course of a multiple personnel shift, Dow promoted Mike Bonanno, a white male, to a supervisory position in the Latex Department. Oberlatz had final appointment authority over both promotions.

## II. VIABILITY OF COLEMAN'S § 1981 CLAIMS

In part, Dow and Raymond claim entitlement to summary judgment because of the interpretation of 42 U.S.C. § 1981 by the Supreme Court in *Patterson v. McLean*, —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), as it applies to Coleman's claims under that statute.

### A. The Scope of 42 U.S.C. § 1981: *Patterson v. McLean*

Title 42 U.S.C. § 1981 "prohibits racial discrimination in the making and enforcement of private contracts." *Patterson*, 109 S.Ct. at 2370. However, "[s]ection 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Patterson*, 109 S.Ct. at 2372.

[T]he right to make contracts does not extend ... to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or the imposition of discriminatory working conditions.

*Patterson*, 109 S.Ct. at 2373. The Supreme Court specifically held that racial harassment by an employer is not in and of itself prohibited by § 1981, since it relates to discrimination in the "work environment," and the terms and conditions of continuing employment, *not* to discrimination in the making or enforcement of the employment contract itself. *Patterson*, 109 S.Ct. at 2374.

However, § 1981 *does* prohibit racial discrimination in certain types of *promotions:*

[T]he question whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract

1. 42 U.S.C. § 1981 reads as follows:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like

punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

2. On May 11, 1988, this court granted summary judgment to defendant Raymond as to Coleman's Title VII claims, because Raymond had not been named as a respondent in Coleman's complaint filed with the EEOC.

with the employer. If so, then the employer's refusal to enter the new contract [violates] § 1981.... Only where a promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under § 1981.

*Patterson*, 109 S.Ct. at 2377.

The Supreme Court also noted that § 1981's guarantee of "the same right to ... enforce contracts ... as is enjoyed by white citizens" includes protection against

wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations, as well as discrimination by private entities, such as labor unions, in enforcing the terms of a contract. See *Goodman v. Lukens Steel Co.*, 482 U.S. 656 [107 S.Ct. 2617, 96 L.Ed.2d 572] (1987). The right to enforce contracts does not, however, extend beyond conduct by an employer which impairs an employee's ability to enforce through legal process his or her established contract rights.

*Patterson*, 109 S.Ct. at 2373.

**B. Count Two: Denial of Promotional Opportunity**

■ A racially discriminatory promotion violates § 1981 only where "the promotion rises to the level of an opportunity to enter into a new and distinct relation between the employee and the employer." *Patterson*, 109 S.Ct. at 2377. Paragraph 24 of Coleman's second amended complaint explicitly alleges that a promotion to supervisor would involve a "new and distinct" relationship. While neither defendant has contested this aspect of Coleman's claim,[3]

Coleman has presented evidence that the relevant promotions, from senior maintenance technician to supervisor, would have involved a change from an hourly-wage craftsman position to a salaried, managerial one, with a substantial increase in responsibility, such as the supervision of other employees, and not a mere change in pay or title. The court finds that each of the relevant promotions would have formed a "new and distinct" contract of employment, and, therefore, Count Two alleges a violation of 42 U.S.C. § 1981.[4]

**C. Count Three: Racial Harassment, Denial of Equal Terms of Employment, and Denial of Equal Pay**

In Count Three, the plaintiff claims that Raymond has personally subjected him to racial harassment, epithets and abuse, and that his employer, Dow, has allowed him to be so subjected; and that he has been denied equal terms of employment and equal pay because of his race.

■ Racial harassment of an employee does not relate to the making or enforcement of the employment contract, but instead "implicates the performance of established contract obligations and the conditions of continuing employment." *Patterson*, 109 S.Ct. at 2373. Therefore, the conduct alleged in Count Three does not violate § 1981.

Coleman claims, however, that his harassment claims remain viable under § 1981 on two theories:

*First*, that the types of harassment he alleges *are* prohibited by § 1981, because:

---

3. Defendant Dow, while expressly not conceding for all purposes that the promotions satisfy this criterion, assumes for purposes of summary judgment only that the promotions are actionable under § 1981. Defendant Dow Chemical's Memorandum of Law in Support of Motion for Summary Judgment, p. 29, n. 83. Defendant Raymond does not raise the issue, focusing his argument instead on other factual matters. Memorandum of Law in Support of Defendant Robert Raymond's Motion for Summary Judgment, pp. 9–12.

4. This finding is supported by the decisions of other courts on this issue. *See, e.g., Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir.1989) ("[p]romotion from clerk to supervisor with consequent increase in responsibility and pay satisfies this test"); *Duse v. International Business Machines, et al.*, 748 F.Supp. 956 (D.Conn.1990) (Ruling on Pending Motions) at 965 (distinction between "routine" and "non-routine" promotions); *Williams v. National Railroad Passenger Corp.*, 716 F.Supp. 49, 51 (D.D.C.1989) (no "new and distinct relation" where only change would be increase in pay).

a. Raymond harassed Coleman intending to impair his ability to be promoted to supervisor; and

b. the harassment and unequal treatment suffered at Dow is evidence that Dow discriminated on the basis of race at the time of the formation of Coleman's employment contract; and

*Second,* that the holding of *Patterson* should not apply "retroactively" to Coleman's claims.

The court will briefly address each of these arguments.

### 1. *Harassment as Interference with Promotion*

■ Coleman claims that Raymond harassed him intending to impair his ability to form a "new and distinct" contractual relationship with Dow through promotion to the position of supervisor, and that this type of harassment violates § 1981.

If a black employee is racially harassed, with the intent that he will thereby not be promoted to a "new and distinct" contract with that employer, then the harasser has violated § 1981 by attempting to impair that employee's ability to make contracts because of his race. However, that violation falls within Count *Two* of Coleman's complaint, as a denial of promotional opportunity. Racial harassment affecting the conditions of continuing employment, as alleged in Count Three, does not violate § 1981.

The evidence of harassment is relevant to Count Two, to support Coleman's claim that the articulated reasons offered by Dow and Raymond for denying Coleman promotions were pretextual. *Patterson,* 109 S.Ct. at 2378. Nevertheless, the harassment itself does not violate § 1981.

### 2. *Harassment as Evidence of Discrimination at Formation of Employment Contract*

■ Coleman contends that the subsequent harassment and denial of equal terms of employment are evidence that Dow, at the time of the formation of his employment contract, intentionally refused to enter into a contract with Coleman on racially neutral terms, which was recog-

nized as a violation of § 1981 in *Patterson.* 109 S.Ct. at 2376–2377.

However, Coleman did not allege in his complaint that he was claiming that Dow discriminated at the time of his contract's formation. Count Three does not mention the making or formation of the employment contract. Dow was not informed that the entire period of Coleman's employment was encompassed by this suit until this effort to salvage the harassment claims after the *Patterson* decision. This action was filed in 1986, at which time the employment contract had continued over the course of some 15 years—19 years, if events subsequent to the filing of the instant action are considered.

Coleman's "ability to plead that the racial harassment is 'severe or pervasive' should not allow him to bootstrap a challenge to the conditions of employment (actionable, if at all, under Title VII) into a claim under § 1981 that [Dow] refused to offer [him] the 'same right to ... make' a contract." *Patterson,* 109 S.Ct. at 2377. The harassment and unequal treatment claims in Count Three cannot fairly be read to allege that Dow intended to discriminate against Coleman at the time of the formation of his employment contract. Therefore, Count Three does not state a violation of § 1981 on this theory, either.

### 3. *Retroactivity of Patterson v. McLean*

■ Plaintiff argues that *Patterson* should not apply "retroactively" to his claims, under criteria outlined in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). The relevant factors are:

First, the decision to be applied nonretroactively must establish a new principle of law;

Second, whether retroactive application of that rule will further or retard its operation;

Finally, whether inequity will be imposed by retroactive application of that rule.

*See Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355; *Saint Francis College v. Al-Khazraji,* 481 U.S. 604, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987).

This court first notes that a majority of other courts have applied *Patterson* to cases pending as of June 15, 1989, implicitly rejecting the non-retroactivity argument. *See, e.g., Brooms v. Regal Tube Co.,* 881 F.2d 412, 424 (7th Cir.1989) (refusing to consider § 1981 claims on appeal where not within scope of statute as defined in *Patterson*); *Williams,* 716 F.Supp. at 51 (dismissing promotion and retaliation claims as not within scope of § 1981 as defined in *Patterson*); *Alexander v. New York Medical College,* 721 F.Supp. 587, 588 (S.D.N.Y. 1989) (demotion and retaliatory discharge claims dismissed as not within scope of § 1981 as defined in *Patterson*).

Of those courts that have explicitly considered the retroactivity issue, most have applied *Patterson* retroactively. *Morgan v. Kansas City Area Transportation Authority,* 720 F.Supp. 758, 760 (W.D.Mo. 1989); *Thompson v. Johnson & Johnson Management Information Center,* 725 F.Supp. 826, 827–828 (D.N.J.1989); *Malekian v. Pottery Club of America, Inc.,* 724 F.Supp. 1279, 1281 (D.Colo.1989); *Hudgens v. Harper–Grace Hospitals,* 728 F.Supp. 1321 (E.D.Mich.1990); *Coleman v. Domino's Pizza, Inc.,* 728 F.Supp. 1528 (S.D.Ala. 1990). The few courts that have refused to apply *Patterson* "retroactively" have done so out of unusual circumstances related to timing concerns. *See Gillespie v. First Interstate Bank of Wisconsin Southeast,* 717 F.Supp. 649 (E.D.Wisc.1989) (non-retroactive application to § 1981 harassment claims where jury had rendered verdict prior to *Patterson*); *Thomas v. Beech Aircraft Corp.,* 58 U.S.L.W. 2218, 1989 WL 110848 (D.Kan.1989) (non-retroactive application to § 1981 claims due to long delay in bringing case filed in 1978 to trial).

Considering this case in an individualized basis in light of the factors outlined in *Chevron Oil,* this court finds that *Patterson* applies to Coleman's claims of racial harassment. First, although *Patterson* did not purport to set forth a new rule of law, the Second Circuit had held that racial harassment of an employee violated

§ 1981. *Lopez v. S.B. Thomas, Inc.,* 831 F.2d 1184, 1189 (2d.Cir.1987); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 955 (2d.Cir.1988). However, Coleman does not cite any clear Second Circuit precedent from *prior to* 1986, when his suit was filed, on which he claims to have relied.

However, even assuming the first criterion to have been met, the other two factors do not support non-retroactive application. The purpose of the rule of law announced in *Patterson* was to interpret the language Congress chose in drafting § 1981 and to clarify the extent of overlap between protection against racial discrimination in employment as afforded by that statute and by Title VII. 109 S.Ct. at 2379. The court declined to stretch the meaning of the words used in § 1981 to encompass the problem of racial discrimination in the conditions of continuing employment where Congress had chosen to address that problem through the conciliatory mechanisms of Title VII, in order to try to salvage the employer-employee relationship. *Patterson,* 109 S.Ct. at 2375.

Further, applying *Patterson* to Coleman's claims will not be inequitable. Coleman may still pursue his harassment claim against Dow under Title VII; and although he is precluded from proceeding on his harassment claims against Raymond,[5] he is no worse off in this respect than the plaintiff in *Patterson* herself, or than any of the many other plaintiffs whose claims have been dismissed in light of *Patterson.* Non-retroactive application of a decision based solely on the fact that the plaintiff relied on past precedent, without the other two *Chevron Oil* factors, would turn the exception of non-retroactive application into the rule.

Finally, Coleman contends that widely supported proposals for amending § 1981 to protect against discrimination in the conditions of continuing employment, pending in Congress, make dismissal of his harass-

---

**5.** On May 11, 1988, this court granted summary judgment to defendant Raymond on Coleman's Title VII claims because Raymond had not been named as a respondent in Coleman's EEOC complaint.

ment and equal treatment claims inequitable. However, the impact of legislative amendments on current litigants is for Congress to consider in drafting and voting upon those amendments. Until those proposals are enacted, this court is bound by the Supreme Court's interpretation of § 1981. This case, like the numerous other post-*Patterson* § 1981 suits where harassment claims have been dismissed, will be decided "in accordance with the law existing at the time of decision." *St. Francis College*, 481 U.S. at 608, 107 S.Ct. at 2025; *Gulf Offshore Oil Co. v. Mobil Oil Corp.*, 453 U.S. 473, 486 n. 16, 101 S.Ct. 2870, 2879 n. 16, 69 L.Ed.2d 784 (1981).

Denial of equal treatment and equal pay also relate to the conditions of continuing employment, rather than the making or enforcement of the employment contract. Though reprehensible, they, too, do not violate § 1981.

Therefore, the § 1981 harassment, unequal treatment, and unequal pay claims alleged in Count Three must be dismissed.

### III. Count Four: Retaliation For Filing EEOC Charge

█ In Count Four, Coleman alleges that after "filing his charge of racial discrimination with the U.S. Equal Employment Opportunity Commission, ... [he] suddenly began to receive less favorable evaluations" than he had received prior to the filing of that complaint, and that "defendant Raymond told plaintiff that he would 'get even with' plaintiff for filing complaints."

§ 1981 proscribes racial discrimination in the making of contracts, as well as "wholly *private* efforts to impede access to the courts or obstruct nonjudicial methods of adjudicating disputes about the force of binding obligations ... [and] conduct which impairs the right to enforce contract obligations through legal process." *Patterson*, 109 S.Ct. at 2373–2374.

In *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 40 (2d Cir.1984), the Second Circuit held that "the substantive rights created by [§ 1981] also afford protection to an individual's efforts to enforce those rights." The court noted:

The ability to seek enforcement of one's right to be free of racial discrimination is an integral part of the right itself. A person who believes he has been discriminated against because of his race should not be deterred from attempting to vindicate his rights because he fears his employer will punish him for doing so. Were we to protect retaliatory conduct, we would in effect be discouraging the filing of meritorious civil rights suits and sanctioning further discrimination against those persons willing to risk their employer's vengeance by filing suits. [*Goff v. Continental Oil Co.*, 678 F.2d 593, 598 (5th Cir.1982).]

A retaliation claim is cognizable under § 1981 to make that section an available and effective remedy for racially motivated employment discrimination. The remedy would be impaired for all employees if any employee could be disadvantaged because he sought or secured relief from discriminatory treatment, whether or not the retaliation itself is racially motivated.

*Choudhury*, 735 F.2d at 43. *Choudhury* was decided prior to the Supreme Court's ruling in *Patterson*, but its reasoning has continued relevance, since the court's focus was on the deterrent effect of retaliation on an employee's right and ability to enforce rights protected by § 1981. At the time *Choudhury* was decided, the scope of § 1981 appeared to be considerably broader than at present; therefore, the court did not feel the need to specify whether retaliation is prohibited by § 1981's guarantee of the right to *enforce* contracts, or by extension of the right to *make* contracts. The former reasoning would prohibit retaliation against those who file *any* race discrimination claim with the EEOC to enforce their employment contract, while the latter would protect only those whose initial claim itself stated a violation of § 1981.

Courts considering the viability of retaliation claims since *Patterson* have divided over the question of whether retaliation violates § 1981, and the extent to which it does so. Several courts have held that

retaliation is post-formation conduct which does not violate § 1981's right to enforce contracts. *Overby v. Chevron USA, Inc.,* 884 F.2d 470, 473 (9th Cir.1989); *Alexander,* 721 F.Supp. at 588. Other courts have held that § 1981 does protect persons from retaliation against them for enforcing rights which are protected by § 1981 itself. *Williams v. National Railroad Passenger Corp.,* 716 F.Supp. 49, 51–52 (D.D.C.1989); *English v. General Dev. Corp.,* 717 F.Supp. 628, 632–633 (N.D.Ill.1989). And at least one court has held that § 1981 prohibits retaliation against an employee for complaining of racial discrimination even where the discrimination complained of does not itself violate § 1981. *Jordan v. U.S. West Co.,* 716 F.Supp. 1366, 1367 (D.Col.1989).

When an employer retaliates against an employee for filing a race discrimination claim, the employer diminishes or impairs the value of that employee's right to enforce his employment contract, since any remedy received for violation of that contract is diminished in value or offset by the punishment inflicted for pursuing that remedy.

Unfairly evaluating an employee's performance as inferior involves the conditions of continuing employment, and would not of itself violate § 1981. However, when that action is in retaliation for the employee having filed a complaint with the EEOC regarding denial of promotional opportunities—a right protected by § 1981—then it is done with an intention to impair the employee's ability to make and enforce his contract. At least where an employee is retaliated against for an attempt to enforce rights which are themselves protected by § 1981, as in Coleman's case, that retaliation violates § 1981. *See Choudhury,* 735 F.2d at 43. *Duse v. International Business Machines Corp.,* Civ. No. B–84–455 (EBB) Dkt # 249 at p. 24 (D.Conn. Feb. 5, 1989) (Ruling on Pending Motions) (§ 1981 protects parties from retaliation for protesting conduct prohibited by § 1981).

The fact that retaliation is prohibited by Title VII is no cause to unduly restrict the plain meaning of § 1981's terms. The Supreme Court has noted that the two statutory provisions' overlap at the time of hiring makes sense, since "Title VII's mediation and conciliation procedures would be of minimal effect, for there is not yet a[n employer-employee] relation to salvage." *Patterson,* 109 S.Ct. at 2375. Where an employer has retaliated against an employee for seeking to enforce rights protected by § 1981, the employer has indicated a lack of interest in a conciliatory approach to resolving the dispute. In addition, Title VII does not require that a retaliation claim be presented to the EEOC prior to filing suit, so the practical impact will be minimal. *NOW v. Sperry Rand Corp.,* 457 F.Supp. 1338, 1344 (D.Conn.1978).

Therefore, Count Four alleges a violation of § 1981.

## IV. SUMMARY JUDGMENT AS TO REMAINING CLAIMS

### A. Applicable Standards

A motion for summary judgment under Rule 56, Fed.R.Civ.Proc., may be granted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249–250, 106 S.Ct. at 2511. The burden is on the defendants, as the moving parties, to establish the absence of dispute over material facts. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). In determining whether or not there is a genuine issue of material fact, the court is required to draw all factual inferences in favor of the non-moving party. *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460,

**154**

465 (2nd Cir.1989); *Donahue v. Windsor Locks Board of Fire Commissioners*, 834 F.2d 54, 57 (2d Cir.1987).

"[S]ummary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated." *Ramseur*, 865 F.2d at 465; *Patrick v. LeFevre*, 745 F.2d 153, 159 (2d Cir.1984).

The defendants' motions for summary judgment are considered in light of the foregoing principles.

### B. Counts One And Two: Denial of Promotional Opportunity

The scheme of proof for establishing the ultimate issue of whether the defendant intentionally discriminated against the plaintiff in an employment decision is the same under both Title VII and § 1981. *Patterson v. McLean*, 491 U.S. 164, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989). Under that scheme:

> [First, the plaintiff] has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, non-discriminatory reason for the employee's rejection." ... Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)).

When this issue arises on a motion for summary judgment, the Second Circuit has noted:

> In assessing the inferences to be drawn from the circumstances of [a challenged employment decision], the court must be alert to the fact that '[e]mployers are rarely so co-operative as to include a notation in the personnel file' that [the challenged action] is for a reason expressly forbidden by law.... Thus, the absence of direct or explicit evidence that a challenged personnel action was motivated by race is not fatal to a claim of race discrimination. A showing that a proffered justification is pretextual is itself sufficient to support an inference that the employer intentionally discriminated.... Further, the plaintiff is not required to prove that the employer's proffered reasons are false, but only that they were not the only reasons and that race made a difference.

*Ramseur*, 865 F.2d at 464–465 (citations omitted).

#### 1. *Dow Chemical*

■ Dow concedes that Coleman can establish a prima facie case of discrimination as to the January, 1985 promotion of Eugene Laroux to maintenance supervisor. Dow has come forward with evidence of legitimate, non-discriminatory reasons for choosing Laroux over Coleman for that position, claiming that Laroux was more qualified, had higher recommendations, and appeared more motivated than Coleman.

Coleman may establish that Dow's articulated reasons were pretextual by a number of methods, such as by establishing that he was more qualified than Laroux, or by using evidence of Dow's past treatment of him, including the harassment and unequal treatment he experienced, to show that it is likely that race was a factor in the decision not to promote him. *Patterson*, 109 S.Ct. at 2378. Coleman has presented evidence that he was better qualified than Laroux, and that Laroux was *not*, in fact, qualified for that position. There is also evidence from which one could infer that Raymond's racial prejudice against Coleman and other blacks influenced his evaluation of Laroux, and that his evaluation was a significant factor in the promotion decision. There is also evidence that Oberlatz felt that the plaintiff, Coleman, held inappropriate concerns about Equal Employment Opportunity practices and race discrimination at Dow, which influenced his selection.

As to the other challenged promotions, Coleman has also presented a prima facie case, although not as clearly as for the January 1985 promotion. Dow has put forth evidence that Coleman was not qualified for these promotions, and that the person chosen for each of those promotions was more qualified than Coleman. However, Coleman has presented testimony that his qualifications, concededly adequate for supervisor in 1985, did not change after that time, that he had some experience in the production area, and that inter-departmental promotions to supervisor were not uncommon.

There is sufficient evidence to reasonably infer that Dow's articulated reasons for not selecting Coleman were pretextual, and that Coleman's race was a factor that made a difference. Therefore, Dow's motion for summary judgment as to Counts One and Two is denied.

### 2. Robert Raymond

■ Raymond argues that since he would not be a party to any contract created by any promotion of Coleman to a supervisory position which would constitute a "new and distinct" relation between Dow and Coleman, he cannot be held liable under § 1981. Raymond further contends that Plant Manager Oberlatz had final authority over the promotional decisions in question, and Raymond's recommendation was only one of several factors which Oberlatz considered.

*Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), determined that the right to lease property guaranteed by 42 U.S.C. § 1982, protects against interference by third parties as well as discriminatory actions by the immediate lessor. 396 U.S. at 237. Because of the common origin of §§ 1981 and 1982 in Section 1 of the Civil Rights Act of 1866, lower courts have consistently held that this reasoning applies with equal force to protect against third-party interference with the rights to make and enforce contracts guaranteed by § 1981. *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.1975); *Kolb v. State of Ohio, Dept. of Mental Retardation and Developmental Disabili-*

*ties, Cleveland Developmental Center*, 721 F.Supp. 885, 892 (N.D.Ohio 1989); *Coley v. M & M Mars, Inc.*, 461 F.Supp. 1073, 1076 (D.C.Ga.1978). Therefore, an individual actor violates § 1981 if he intentionally interferes, on the basis of race, with another's right to make and enforce contracts, regardless of whether the employer or anyone else may also be liable. *Kolb*, 721 F.Supp. at 891.

Raymond was the person who originally brought the vacant supervisory position in the maintenance department to Oberlatz' attention, and pointed out Laroux's availability for it. Deposition testimony and affidavits of Dow employees and other witnesses indicate that Raymond may have been racially prejudiced, and may have particularly disliked Coleman. Raymond participated in Coleman's job performance evaluations throughout the time period in question, which evaluations were factors in determining who was promoted. Coleman has also presented evidence that Raymond harassed and discriminated against him in assigning work, which impaired his opportunity for promotion.

The extent of Raymond's role in the promotion decisions, and whether he discriminated on the basis of race in making his recommendations, are material issues that a reasonable factfinder could resolve in Coleman's favor, based on inferences on the record. Therefore, Raymond's motion for summary judgment as to Count Two is denied.

### C. Count Three: Racial Harassment, Denial of Equal Terms of Employment, and Denial of Equal Pay

■ Count Three of Plaintiff Coleman's Second Amended Complaint alleges that at Dow, he "has been subject to racial harassment, epithets, and abuse and to denial of equal terms and conditions of employment," and has been denied equal pay, because of his race, in violation of Title VII.

Dow contends that Coleman has not supported his unequal pay claim, because the reasons for the alleged disparities can be explained by non-discriminatory reasons, such as seniority. Coleman alleges, sup-

ported by testimony and affidavits of other Dow employees, that his wage differential was affected by his supervisors' racial biases in the course of his performance evaluations and work assignments, and that Dow held him to a higher standard than white employees.

In addition, Dow contends that the harassment ceased after Coleman reported them to the Employee Relations Manager, Gary Kesler. Coleman states in his deposition that the harassment and unequal treatment did *not* cease after he complained to Kesler, and that Kesler took no action on his complaints except to chastise Coleman for raising the issue, stating that an investigation would "embarrass" Coleman.

Whether these incidents occurred, the motivation for those incidents, and whether Dow treated Coleman differently from white employees or allowed him to be subjected to harassment, by failing to adequately address incidents that occurred, are questions that can only be resolved by the trier of fact at trial, since their resolution will turn on the credibility of the witnesses involved. Therefore, Dow's motion for summary judgment as to the Title VII claims in Count Three is denied.

### D. Count Four: Retaliation For Filing EEOC Claims

Count Four alleges that after filing his charge of racial discrimination with the EEOC, Coleman suddenly began to receive less favorable evaluations from the defendants than prior to that filing, and that Raymond told Coleman that he would "get even" with him for filing complaints.

Dow claims that Coleman's Title VII retaliation claim is improper because it was not included in his EEOC complaint, and was not the subject of any subsequent complaint. Although there is a split of authority on this issue, this court held in *NOW v. Sperry Rand Corp.*, 457 F.Supp. 1338 (D.Conn.1978), that an additional complaint to the EEOC alleging retaliation for filing an earlier complaint with the EEOC was unnecessary, noting that since it is the nature of a retaliation claim that it arises after the filing of an EEOC charge, requiring a second complaint would erect an additional procedural barrier to a Title VII suit, contrary to that statute's goals. This court finds that reasoning persuasive in the present case as well.

Dow alleges that the evaluations of Coleman's job performance did not become less favorable immediately after he filed his complaints. Dow points out that Coleman's July 1985 evaluation, the first after the filing of the EEOC complaint, indicates no change in Coleman's rating and ranking from 1984. Dow and Raymond also point out that Raymond's participation in the evaluation process decreased starting in 1985, as other employees' opinions received increasing weight.

However, while Coleman's *rating* did not change in 1986 either, his *ranking* dropped from 6th out of 22 people in the department in 1985, to 11th out of 19 people in 1986. Coleman claims that this drop is due to retaliation for the filing of the EEOC complaint and the present lawsuit, both in the evaluation process itself, and in the fact that since filing the complaints his work assignments have not been suitable for someone of his experience and seniority. Coleman and other Dow employees state that Coleman's actual performance remained consistently high during this period.

Coleman plans to testify that Raymond told him he would "get him" for filing his complaint with the EEOC. Further, the extent of Raymond's participation in, and his impact upon, Coleman's performance evaluations is a question for the trier of fact to determine.

Whether Coleman's evaluations suddenly dropped, and whether Dow's and Raymond's actions were motivated by retaliatory intention, remain in dispute for the trier of fact to determine, based on the credibility of the witnesses who testify. Therefore, defendants' motions for summary judgment as to Count Four are denied.

### V. CONCLUSION

For the foregoing reasons the court grants summary judgment to the defen-

dants as to the § 1981 harassment and equal treatment claims. The defendants' summary judgment motions are denied as to the plaintiff's other claims. The plaintiff is directed to amend his complaint to comport with this ruling by March 26, 1990.

In addition, as noted at oral argument on February 26, 1990, discovery has now been completed with the exception of the defendant's psychiatric expert's report and deposition, which the court was assured would be handled expeditiously. Therefore, this matter shall be assigned for jury selection on April 17, 1990.

SO ORDERED.