**Lawrence OTUBU, Plaintiff,**

v.

**WAKEFERN FOOD CORPORATION, Defendant.**

**No. 88 Civ. 4389 (SWK).**

United States District Court, S.D. New York.

May 29, 1990.

Sussman & Sussman by Michael H. Sussman, Yonkers, N.Y., for plaintiff.

Weil, Gotschal & Manges by Deborah S.K. Jagoda, New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This is an employment discrimination action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. Presently before this Court is defendant's motion to dismiss plaintiff's § 1981 claim pursuant to Fed.R.Civ.P. 12(b)(6).

### Background

The plaintiff Lawrence Otubu, a black male, is a certified public accountant. The defendant Wakefern Food Corporation ("Wakefern") is a food distribution company that employed the plaintiff in 1985. Plaintiff worked for Wakefern from January to September, 1985, initially as a temporary employee, and then on a full time basis.

Plaintiff applied to Wakefern for the position of administrative clerk at its Wallkill facility in response to a November 1984 newspaper advertisement. According to the complaint, plaintiff was offered a full-time job during his interview at $15,236 per year, but was informed that he would be required to serve a short probationary period of between one to three months as a temporary employee. Based on this representation, plaintiff accepted and began

working on January 2, 1985. At that time, plaintiff was the only black administrative clerk.

Plaintiff made several inquiries about promotion to a permanent position but did not receive his promotion as expected during the first three months. During this period, several white temporary employees with qualifications allegedly inferior to plaintiff allegedly were appointed to permanent positions.

On May 17, 1985, plaintiff's immediate supervisor, Robert Borzomati, gave plaintiff a two-week termination notice based on the company's previously undisclosed policy that temporary employment was limited to no more than one-thousand hours. While it was standard to advise individuals hired for temporary positions of the one-thousand hour rule, plaintiff was not so advised. Furthermore, Borzomati told plaintiff that the company had no open permanent positions.

Plaintiff complained to Patrick Garland, Administrative Manager at the Wallkill facility. Plaintiff had several meetings with Garland, at least one of which also included John Perini, Wakefern's Personnel Manager. At one of these meetings, Garland and Perini told him that he had not earlier received a permanent position because his supervisor, Borzomati, had not recommended him for the position. After objecting and meeting with Garland several times, plaintiff was offered a permanent position as an auditor beginning June 2, 1985.

Plaintiff alleges on information and belief that Eugene Dowd, an administrative supervisor at the Wallkill facility, instructed the receiving clerks to report all of plaintiff's mistakes to him immediately. Plaintiff further states that it was not standard procedure for the receiving clerks to have such instructions, and that none of the white auditors were subject to such scrutiny.

On September 10, 1985, John Perini advised plaintiff that he was terminated because of four accounting mistakes, apparently reported by the receiving clerks, in which he failed to follow company policy.

Plaintiff charges that these mistakes were a pretext for his termination, which was motivated in fact by racial discrimination.

Plaintiff filed a complaint with the New York State Division of Human Rights on March 7, 1986, charging defendant with discrimination in its employment practices, including plaintiff's termination. The Equal Employment Opportunity Commission issued a right to sue letter on March 30, 1988.

## Discussion

The parties agree that the Supreme Court's recent decision of *Patterson v. McLean Credit Union,* —— U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) precludes any claim under § 1981 for discriminatory termination or discriminatory harassment during employment. In *Patterson,* the Supreme Court limited the scope of § 1981 to prohibit discrimination only in the initial formation of an employee's employment contract or his ability to enforce such employment contract. *Id.* 109 S.Ct. at 2370. At the outset, this Court must dismiss plaintiff's claim for discriminatory termination. A plaintiff, however, may still assert a discriminatory failure to promote claim under § 1981 if "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." *Id.* at 2377.

The parties also agree that the offending conduct with regard to the hiring and failing to promote Otubu falls outside the three-year limitations period applicable to these actions. *See, e.g., Keyse v. California Texas Oil Corp.,* 590 F.2d 45, 47 (2d Cir.1978) (three-year statute of limitations applies); *Zangrillo v. Fashion Institute of Technology,* 601 F.Supp. 1346, 1350 (S.D.N. Y.1985) (same), *aff'd mem.,* 788 F.2d 2 (2d Cir.1985). Plaintiff began working no later than January 2, 1985 and assumed a permanent position on June 2, 1985. Any discrimination with regard to the initial hiring occurred on or before January 2, 1985, while any discriminatory denial of a permanent position must have taken place before he was finally promoted on June 2, 1985. This complaint was filed on June 23, 1988.

Plaintiff argues the applicability of the doctrines of continuing violations and equitable tolling to save the portions of the § 1981 claim that survive *Patterson*. As the defendant argues, however, the doctrine of continuing violations cannot be applied here because all the potentially viable continuing violations were more than three years old when plaintiff commenced this action. *See, e.g., United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) (seniority system did not constitute a present or continuing violation despite continuing impact on pay and fringe benefits); *Association Against Discrimination in Employment v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981) (timely violations "still fresh" within the statutory period rescued otherwise stale claims from time bar under the continuous-policy principle), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).

The Court also finds that the plaintiff has not demonstrated that the doctrine of equitable tolling would apply under these circumstances. In *Baldwin County Welcome Center v. Brown*, the Supreme Court outlined four circumstances that might justify equitable tolling. 466 U.S. 147, 151, 104 S.Ct. 1723, 1725, 80 L.Ed.2d 196. These circumstances include situations where (1) a claimant has received inadequate notice, or (2) where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, or (3) where the court has led the plaintiff to believe that plaintiff had done everything required, or (4) where the affirmative misconduct on the part of a defendant lulled the plaintiff into inaction. *Id.* The Court refused to grant a tolling in that case because "[o]ne who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Id; see Nielsen v. Flower Hospital*, 639 F.Supp. 738, 747 (S.D.N.Y.1986) (pro se plaintiff's reliance on admittedly defective complaint form issued by Pro Se Clerk required equitable estoppel either as a situation in which the claimant has received inadequate notice, or where the court has led the plaintiff to

believe that he had done everything required of him).

Equitable estoppel was found unwarranted in a discrimination action by a blind postal worker who had been denied a permanent promotion. *Knowles v. Postmaster General*, 656 F.Supp. 593, 599–600 (D.Conn.1987). The *Knowles* court explained that the plaintiff could invoke an equitable tolling only by first showing that he was affirmatively misled by the defendant or was unaware of the appropriate administrative procedures. *Id.* at 599. The *Knowles* court would not apply equitable estoppel because the defendant had not misled the plaintiff, even though the plaintiff was arguably misled by a union official who told him to "keep a low profile." *Id.* at 600. In *Mauro v. Board of Higher Education*, Judge Weinfeld refused to find an equitable tolling of either the 300–day period to file with the EEOC or the three year statute of limitations under § 1981. 658 F.Supp. 322, 324 (S.D.N.Y.1986) (former college instructor who was not reappointed filed discrimination claim that was dismissed as time barred), *aff'd*, 819 F.2d 1130 (2d Cir.), *cert. denied*, 484 U.S. 865, 108 S.Ct. 186, 98 L.Ed.2d 139 (1987). That holding was based on the absence of any factual support that the plaintiff was misled or otherwise prevented from learning of the discrimination he alleged in his complaint. *Id.*

The plaintiff in this case has not specifically argued that he was misled by the defendants with regard to the nature of his lawsuit. Moreover, the plaintiff has not explained why he waited until June 23, 1988 to file this action, even though the last possible date of alleged discrimination that is now potentially actionable under § 1981 took place prior to assuming a permanent position on June 2, 1985. Instead, plaintiff argues that he detrimentally relied on the availability of a continuous violations theory based on the broader scope of § 1981 prior to *Patterson*. In support of this argument for an equitable tolling, plaintiff states that Wakefern had notice of his claims of discrimination by virtue of filing the Title VII claim with the EEOC

and the State Division of Human Rights. Plaintiff also contends that he filed this action within three years of his termination, even though the termination is not actionable under § 1981. Furthermore, plaintiff claims to have personally informed defendant Wakefern of his allegations of discrimination in his initial hiring, as a temporary worker, and the company's failure to timely promote him. Finally, the plaintiff argues that he shall be prejudiced because his recovery is potentially greater under § 1981 than Title VII.

The Court is not persuaded on these facts that Otubu is entitled to any equitable tolling based on his allegation of detrimental reliance. Even if a tolling might be justified in some circumstances for reliance on the earlier understanding of § 1981, it was unreasonable for this plaintiff to wait and rely on the chance that he could demonstrate a policy of continuous violations.[1] This Court concludes that the plaintiff did not diligently pursue his § 1981 claims.

The plaintiff's failure either to assert that he was misled or that he received inadequate notice undermines his argument that the statute of limitations should be equitably tolled. In the context of the 300–day limitations period for filing with the EEOC in Title VII actions, the Supreme Court stated that

> Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants .... '[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'

*Baldwin, supra,* 466 U.S. at 152, 104 S.Ct. at 1726. The limitations period applicable here also should not be so easily disregarded. This Court is not inclined to apply an

---

1. The Court also is not persuaded by plaintiff's claim that he is prejudiced by the unavailability of a jury or punitive damages under Title VII. This Court shall not rescue a stale § 1981 claim merely because it provides a greater remedy. This conclusion is supported by the *Patterson*

equitable toll to this stale § 1981 claim where there are no factual allegations that this plaintiff was misled by the defendant or anyone else.

### Conclusion

Defendant's motion to dismiss the claims based on 42 U.S.C § 1981 is granted for the aforementioned reasons.

SO ORDERED.

Court's concern that unnecessary overlap between Title VII and § 1981 would "upset the delicate balance between employee and employer rights struck by Title VII...." 109 S.Ct. at 2375 n. 4.