**Jackie MONTGOMERY, Plaintiff,**

v.

**ATLANTA FAMILY RESTAURANTS, INC., Defendant.**

Civ. A. No. 1:89–CV–2264–JTC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Dec. 4, 1990.

David H. Bedingfield, Atlanta, Ga., for plaintiff.

Martha C. Perrin, Atlanta, Ga., for defendant.

## ORDER

CAMP, District Judge.

This action is presently before the Court on the Magistrate's Report and Recommendation. The defendant has filed an objection. The Court has performed a careful *de novo* review of the record, and for the reasons stated below, AFFIRMS the Magistrate's holding.

The Court finds the Magistrate's Report to be correct in all respects, and ADOPTS it in its entirety as the opinion of the Court.

Defendant's attempts to convince the Court that the Magistrate has misapplied cases and information to reach an erroneous conclusion are unpersuasive. Most of defendant's arguments asserted in its objection are a reiteration of the arguments asserted by defendant in its Motion for Summary Judgment.

In making a recommendation on defendant's Motion for Summary Judgment, the Magistrate correctly found that the conduct in which the defendant was allegedly involved would constitute a "continuing violation," thus allowing the plaintiff's EEOC charge to relate back to the 8th of November, 1988. Further, the Magistrate correctly determined that the elements nec-

essary for the stating of a charge in plaintiff's attorney's letter of November 8th were satisfied. As such, the Magistrate was correct in DENYING defendant's Motion for Summary Judgment based on allegations of an untimely filed EEOC report.

The Magistrate was similarly correct in GRANTING defendant's Motion for Summary Judgment with respect to plaintiff's Section 1981 claims for failure to promote based on the recent holding in *Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Plaintiff does not object to this conclusion.

Similarly, the Magistrate correctly determined that the defendant's Motion for Summary Judgment should be DENIED as to plaintiff's Section 1981 claims for discharge and loss of income during her employment. Defendant argues that the recent case of *Otubu v. Wakefern Food Corp.*, 741 F.Supp. 57, 53 F.E.P. (BNA) 1560 (S.D.N.Y. 1990) directly contradicts the holding of the Magistrate with respect to the discharge of plaintiff. In that case, a black employee alleged employment harassment and termination on the basis of his race. The plaintiff there alleged the doctrine of continuing violations in an attempt to save the portions of the claim that survived *Patterson*. *Id.* 741 F.Supp. 57, 53 F.E.P. (BNA) at 1562. However, the Court there determined that the doctrine of continuing violations was not applicable to that case because all of the alleged violations occurred outside of the statutory period. *Id.*

The *Otubu* case is distinguishable from the present action. In this instance, the plaintiff alleges continuing violations that extend into the statutory period; that is, plaintiff alleges violations that occurred within the two-year period prior to the institution of this suit. Accordingly, the defendant's attempted reliance on the holding in *Otubu* is misplaced.

As such, the Court adopts the Magistrate's report and recommendations. Defendant's Motion for Summary Judgment is

DENIED as to plaintiff's Title VII action and Section 1981 actions for discharge and loss of income during employment. However, partial Summary Judgment is GRANTED in favor of defendant on the issue of failure to promote asserted in plaintiff's Section 1981 claim.

SO ORDERED.

## MAGISTRATE'S ORDER AND REPORT AND RECOMMENDATION

JOHN E. DOUGHERTY, United States Magistrate Judge.

Plaintiff brings this action for alleged violations of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (Title VII), and the Civil Rights Acts of 1866, 42 U.S.C. § 1981.[1] Plaintiff, a black female, alleges that defendant discriminated against her because of her race. Specifically, plaintiff contends that she was constructively discharged on July 7, 1988, due to defendant's repeated acts of racial discrimination throughout her career. In addition, plaintiff maintains that defendant had a stated policy and practice of denying equal opportunity to blacks, both in hiring and in advancement. The case is currently before the magistrate on defendant's Motion for Summary Judgment and defendant's Motion to Stay Proceedings, as well as on plaintiff's Motion to Amend Complaint and plaintiff's Motion for Class Certification.

*Defendant's Motion to Stay Proceedings*

On July 3, 1990, defendant moved to stay plaintiff's motions to add a party, for class certification, and for summary judgment. In addition, defendant requests the court to impose sanctions against plaintiff or her attorney under Rule 11 of the Federal Rules of Civil Procedure.

■ By Order dated February 23, 1990, the undersigned magistrate ruled, pursuant to the parties' consent, that class issues would be deferred until resolution of the defendant's Motion for Summary Judg-

---

**1.** Plaintiff originally brought this action pursuant to 42 U.S.C. §§ 1981, 1985, and 2000e. Upon completion of substantial discovery, however, counsel for plaintiff withdrew any claims against defendant under 42 U.S.C. § 1985(3). (Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 1, n. 1).

ment. The magistrate directed plaintiff to move to certify this case as a class action pursuant to Fed.R.Civ.P. 23(c)(1) within ninety (90) days after the final determination of defendant's motion. Nonetheless, plaintiff filed its Motion for Class Certification on June 19, 1990. While plaintiff obviously disregarded the court's direction, filing this motion early is not a basis for the imposition of sanctions under Rule 11. Defendant's request is therefore DENIED.

Defendant's Motion to Stay is hereby GRANTED, however. In the event the district judge adopts the magistrate's recommendation as to defendant's Motion for Summary Judgment, the court DIRECTS defendant to file a response to plaintiff's motions within twenty (20) days after final determination of defendant's Motion for Summary Judgment.

### Defendant's Motion for Summary Judgment

Defendant moves for summary judgment, arguing that plaintiff's claim of race discrimination is barred because plaintiff did not timely file her charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Defendant also contends that plaintiff's claims under 42 U.S.C. § 1981 are untimely. Additionally, defendant argues that plaintiff's claims relating to the terms and conditions of her employment are not actionable under 42 U.S.C. § 1981 since that statute cannot encompass post-contract formation conduct.

### Summary Judgment Standard

Under Fed.R.Civ.P. 56(c), summary judgment may be granted only if there is no issue as to any material fact and the law favors the moving party. Although summary judgment motions may be granted in Title VII cases, and often are, such cases raise the issue of discriminatory intent which may be difficult to discern from affidavits. *Thornbrough v. Columbus & Greenville Railroad Co.*, 760 F.2d 633 (5th Cir.1985); *Sweat v. Miller Brewing Co.*, 708 F.2d 655 (11th Cir.1983). The plaintiff need not prove a *prima facie* case at summary judgment stage; rather, she need only demonstrate that there are material issues of fact as to the existence of a *prima facie* case to defeat defendant's motions. The factfinder should accept the truth of plaintiff's testimony; however, summary judgment should be entered if plaintiff fails to make a sufficient showing of an essential element to her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### Whether Plaintiff's Charge of Discrimination Was Timely Filed

Defendant moves for summary judgment on plaintiff's contention that she was a victim of race discrimination, claiming that plaintiff failed to file a charge of discrimination with the EEOC within the required 180–day time limit set forth in 29 U.S.C. § 626(d)(1). The requirement that an EEOC charge be timely filed is a condition precedent to the maintenance of a civil action under Title VII. *IMPACT v. Firestone*, 893 F.2d 1189, 1196 (11th Cir.1990); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). It is well-settled that this 180–day period begins to run when the discriminatory act occurred. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). *See also Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 2264, 104 L.Ed.2d 961, 970 (1989).

Plaintiff was terminated from her position as a waitress by defendant on July 7, 1988, when she left work before the end of her shift and failed to return. On February 2, 1989, 209 days after she walked off the job, plaintiff filed a charge with the EEOC alleging constructive discharge based on race. (Plaintiff's Exhibit, hereinafter P.E., 4). Although defendant maintains that this charge is untimely, plaintiff contends that the charge relates back to November 8, 1988, when plaintiff's lawyer wrote to the EEOC. (*See* P.E. 1).

According to plaintiff, the original charge of discrimination filed on plaintiff's behalf by her then attorney, Craig Jones, was not a completed filing because it contained no sworn verification from plaintiff.

As plaintiff notes, 29 C.F.R. § 1601.12(b) allows for an amendment to cure technical defects in the original charge, including failure to verify the charge, and specifically allows the amendment to relate back to the date the charge was first received. In its reply, however, defendant argues that plaintiff incorrectly represents that only a verification was necessary to perfect the letter of plaintiff's attorney. On November 10, 1988, Lenora Martin responded to plaintiff's attorney's letter on behalf of the EEOC, explaining that "[t]he information you provided is not sufficient for filing a charge of discrimination." (P.E. E).

This letter by Lenora Martin appears to be a form letter, and it does not specify what information is lacking from Attorney Jones' letter dated November 8, 1988. Rather, the letter requests plaintiff to contact the EEOC to arrange for an interview. The affidavit of Carolyn Daniel, Charge Receipt Technical Information Supervisor with the EEOC, filed in support of defendant's Motion for Summary Judgment, merely confirms the language used in the November 10, 1988 letter. That letter does not offer any indication of what, if any, information was lacking from plaintiff's attorney's letter to the EEOC.

The regulations promulgated by the EEOC provide that a charge of discrimination should contain the following information:

(1) the full name, address, and telephone number of the person making the charge;

(2) the full name and address of the person against whom the charge is made, if known;

(3) a clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices;

(4) if known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and

(5) a statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a state or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

29 C.F.R. § 1601.12(a). The regulation further provides: "Notwithstanding the provisions of paragraph (a) of this section, a charge is sufficient when the commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). The magistrate notes that plaintiff's attorney's letter of November 8, 1988 contains information regarding plaintiff Jackie Montgomery, the name and address of defendant, the number of people employed by defendant, and details regarding the alleged discriminatory conduct, including the date of the most recent known racial discrimination against plaintiff. (P.E. D). Thus, all of the information required by the EEOC's own regulations is contained within this letter.

Defendant argues that the lawyer's letters sent to the EEOC do not meet the charge requirements set forth by Title VII. Although defendant makes an issue of the fact that the original correspondence was not plaintiff's but her attorney's, Title VII provides that a charge of discrimination may be filed *on behalf of* any person claiming to be aggrieved. 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.7(a). In support of its argument, defendant cites *Bennett v. Russ Berrie & Co., Inc.*, 564 F.Supp. 1576 (N.D.Ind.1983). That case, however, held that the fact that plaintiff's counsel, rather than plaintiff, signed a letter to the EEOC is not sufficient ground to find that a valid administrative charge has not been filed. *Bennett*, 564 F.Supp. at 1579. Although the court ultimately determined that the letter from the lawyer was not a valid charge, this decision was based on the fact that the letter "was in no way in conformance with the form required by the Commission." *Id.* In addition, the letter was not treated by the EEOC as a charge of discrimination, nor was it processed or investigated by the EEOC. In the case at bar, however, plaintiff's charge

was both processed and investigated by the EEOC, who issued a notice of right to sue letter on June 26, 1989, stating that "[a]ll requirements for coverage have been met." (P.E. H).

"In order to constitute a charge that satisfies the requirement of Section 626(d), notice to the EEOC must be of a kind that would convince a reasonable person that the grievant has manifested an intent to activate the Act's machinery." *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir.1983). As noted above, plaintiff's attorney certainly manifested an intent to bring a charge of discrimination on plaintiff's behalf. Indeed, Attorney Jones wrote, "the purpose of this letter is to serve as a perfected charge of discrimination under Title VII, and it is our intent that the date you receive this letter be deemed the date of filing a charge for purposes of the statute of limitations." (P.E. D). In a similar case where the plaintiff stated in the first line of his letter to the EEOC that the letter constitutes a charge of discrimination against defendant, the court commented as follows: "What could be a clearer indication to the EEOC 'that the grievant has manifested an intent to activate the Act's machinery?'" *Mulcahey v. Hydro–Line Mfg. Co.*, 707 F.Supp. 331, 333–34 (N.D.Ill.1988). Thus, plaintiff's attorney's letter of November 8, 1988 constitutes a charge of discrimination which was timely filed. Accordingly, the charge signed by plaintiff and received by the EEOC on February 13, 1989 relates back to the date of the original charge. (P.E. G). *See* 29 C.F.R. § 1601.12(b).

■ Only those claims contained in a valid charge may be litigated. *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928–29 (11th Cir.1983). Defendant claims that plaintiff's charge contained no claims of discrimination in hiring, promotion, transfer, training, assignment, harassment, retaliation, racial slurs, or negative references, and that therefore, defendant is entitled to summary judgment on these claims. It is well-settled, however, that the com-

plaint may properly encompass any alleged discriminatory conduct reasonably related to the allegations of the charge. *Selman v. Kendall–Hunt Publishing Co.*, 20 Fair Employment Practice Cases (BNA) 1712 (N.D.Ga.1979); *Eastwood v. Victor Temporaries*, 441 F.Supp. 51 (N.D.Ga.1977). Plaintiff's original charge filed by Attorney Jones includes claims of failure to promote, discriminatory job assignments, retaliation, racial harassment, constructive discharge, and negative references. (P.E. D). The intake questionnaire completed by plaintiff also includes allegations of discriminatory promotion and advancement, harassment, and demotion. (P.E. J). These allegations are certainly related to plaintiff's constructive discharge claim. Furthermore, the determination of the EEOC indicates that the commission investigated claims of discriminatory promotion, demotion, harassment, and negative references. (P.E. H). Thus, plaintiff's disparate treatment claims are not beyond the scope of her EEOC charge.

Finally, defendant contends that, even assuming *arguendo* that the charge was timely, plaintiff may recover only for discriminatory acts occurring within the 180–day period preceding the date of her EEOC charge. Defendant therefore argues that plaintiff's claims that she was denied a waitress position before 1985 and a promotion to supervisor in 1986 are time-barred. (Defendant's Memorandum in Support of Motion for Summary Judgment, p. 6, n. 3).

■ Title VII requires that charges of discrimination be filed "within 180 days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e).[2] Therefore, a claim may not be maintained under Title VII where the charging party fails to file a charge of employment discrimination within 180 days of either the occurrence of the alleged discriminatory act or the date on which the party becomes aware of the alleged discriminatory act. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66

---

**2.** Under certain circumstances, not met in this case, the filing period is extended to 300 days.

42 U.S.C. § 2000e–5(e).

L.Ed.2d 431 (1980); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

■ Plaintiff is seeking relief under a "continuing violation" theory. Under that doctrine, a cause of action is considered timely filed if a substantial nexus exists between a timely-filed claim and an otherwise time-barred claim that they may be viewed as constituting a single violation which continues into the statutory filing period. *Roberts v. Gadsden Memorial Hospital,* 835 F.2d 793, 800 (11th Cir.1988), *amended on re'hg,* 850 F.2d 1549. *See also Robinson v. Caulkins Indian Town Citrus Co.,* 701 F.Supp. 208, 211 (S.D.Fla. 1988), citing *Berry v. Board of Supervisors of LSU,* 715 F.2d 971 (5th Cir.1983), *cert. denied,* 479 U.S. 868, 107 S.Ct. 232, 93 L.Ed.2d 158 (1986). In support of her contention that her complaint constitutes a continuing violation of Title VII and Section 1981, plaintiff states that she has filed a class action, and cites the affidavit of Nancy Hamp, a black job applicant who claims she only recently was discriminated against by defendant. (*See* P.E. I). The magistrate rejects plaintiff's argument that defendant's repeated denial of job opportunities to members of plaintiff's class constitutes a continuing violation, for plaintiff's Motion for Class Certification is pending a determination of defendant's Motion for Summary Judgment. Nonetheless, the magistrate CONCLUDES that plaintiff has demonstrated a continuing violation.

■ Plaintiff alleges that defendant uses an existing, continuing racist policy in all its employment decisions. Indeed, plaintiff has filed affidavits of defendant's own ex-supervisors who have sworn under oath that defendant had a policy of coding employment applications and refusing to hire or promote blacks for dining room jobs, where employees would interact with the public. (*See* Affidavit of John Kinnelly; Affidavit of Colleen Robinson). A plaintiff demonstrates a continuing violation where she can show the "maintenance of a discriminatory system both before and during the [limitations] period." *Valentino v. United States Postal Service,* 674 F.2d 56,

65 (D.C.Cir.1982), quoting B. Schlei and P. Grossman, *Employment Discrimination Law,* 232 (Supp.1979). *See also Roberts v. Gadsden Memorial Hospital,* 835 F.2d at 801; *Stoller v. Marsh,* 682 F.2d 971, 975 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983). A continuing violation has been found to exist where defendant maintains a discriminatory promotion system. *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). Furthermore, the Supreme Court has indicated that a racially discriminatory system can be challenged at any time, since it by definition discriminates each time it is applied. *Lorance v. AT & T Technologies, Inc.,* 109 S.Ct. at 2268, 104 L.Ed.2d at 975. As plaintiff alleges that defendant utilizes a discriminatory system covering hiring, promotion, and job placement, the magistrate CONCLUDES that she has adequately demonstrated facts supporting a continuing violation.

Accordingly, plaintiff's charge of constructive discharge in violation of Title VII was timely filed, as the charge signed by plaintiff on February 2, 1989 relates back to the original charge filed by her attorney on November 8, 1988. All plaintiff's allegations of discriminatory treatment are included within the scope of this charge, not just her claim of discriminatory termination. Finally, a question of material fact exists regarding whether defendant maintains racist policies such that plaintiff may recover for a continuing violation predating events 180 days prior to the filing of her charge. For the foregoing reasons, defendant's Motion for Summary Judgment as to plaintiff's Title VII claim should be DENIED.

*Whether Plaintiff Has Stated a Cause of Action Under 42 U.S.C. § 1981*

In its Motion for Summary Judgment, defendant argues that plaintiff's claims relating to her terms and conditions of employment are not actionable under Section 1981, since these claims involve post-contract formation conduct. Defendant con-

tends that claims of constructive discharge under 42 U.S.C. § 1981 are no longer viable after *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989).

A Section 1981 claim concerns discrimination in the making and enforcement of contracts. The 1866 Civil Rights Act provides:

> All persons within the jurisdiction of the United States shall have the same right in every state and territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to light punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981. In *Patterson,* the Supreme Court restricted the scope of Section 1981 actions, holding that "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations, for it expressly prohibits discrimination only in the making and enforcement of contracts." *Patterson,* 109 S.Ct. at 2372, 105 L.Ed.2d at 150. Noting the narrow wording of Section 1981, the court stated:

> [T]he right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions. Such post-formation conduct does not involve the right to make a contract, but rather implicates the performance of established contract obligations and the conditions of continuing employment, matters more naturally governed by state contract law in Title VII.

*Patterson,* 109 S.Ct. at 2373, 105 L.Ed.2d at 150–51. Thus, the court concluded that plaintiff's claim of racial harassment relat-

ing to the conditions of employment is not actionable under Section 1981.

Plaintiff maintains, however, that defendant's alleged pattern and practice of discrimination in hiring, promotion, and firing states a cause of action under Section 1981. In support of its argument, plaintiff states that *Patterson* was an individual case, whereas this is a class action. As explained above, however, the magistrate has not yet ruled on Plaintiff's Motion for Class Certification. Accordingly, this argument is without merit.

The *Patterson* case involved racial harassment, and the Court did not address race-based constructive discharge claims. Furthermore, the court determined that the only relevant inquiry under Section 1981 is "whether the employer, *at the time of the formation of the contract,* in fact intentionally refused to enter into a contract with the employee on racially neutral terms." [Emphasis in original]. *Patterson,* 109 S.Ct. at 2377, 105 L.Ed.2d at 155. In the wake of *Patterson,* courts have come out on both sides of the issue regarding whether discharge claims are actionable under Section 1981, and this issue has yet to be resolved by the Eleventh Circuit.[3] In this case, however, the court need not become engaged in this debate, for *Patterson* itself limits the focus of Section 1981 to whether discrimination occurred "at the time of the formation of the contract." That is precisely the issue involved in the case at bar, where plaintiff alleges that defendant never entered into a racially neutral contract. Rather, plaintiff contends that her entire employment relationship, from start to finish, was controlled by a policy of discrimination.

Citing *Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527 (11th Cir.1990), defendant notes that the Eleventh Circuit has applied the *Patterson* rule to preclude from Section 1981 coverage alleged discriminatory conduct which occurred after a com-

---

**3.** Cases holding discriminatory discharge not actionable under Section 1981: *see e.g., Lavender v. V & B Transmissions & Auto Repair,* 897 F.2d 805 (5th Cir.1990); *Overby v. Chevron U.S.A., Inc.,* 884 F.2d 470 (9th Cir.1989). Cases stating that termination is actionable under Section

1981: *see, e.g., Padilla v. United Air Lines,* 716 F.Supp. 485, 490 (D.Col.1989); *Kriegel v. The Home Insurance Co.,* 739 F.Supp. 1538 (N.D.Ga. 1990); *Hoover v. Crow–Terwilliger Mgt., Inc.,* Civil Action No. 1:88–cv–2021–RCF (N.D.Ga. June 29, 1990).

plaining party has obtained employment. The *Sherman* court held that retaliatory conduct is not actionable under Section 1981, but that Title VII's anti-retaliation provision provides an exclusive remedy. *Sherman* involved Title VII and Section 1981 claims brought by a black employee who alleged that his former employer fired him because the employee married a white woman, and that the former employer persuaded plaintiff's new employer to fire employee in retaliation for employee's filing an EEOC complaint against the former employer. The retaliation alleged in *Sherman* clearly arose after plaintiff's employment by defendant. Unlike the case at bar, therefore, *Sherman* made no claim that the discriminatory conduct was caused by a policy of defendant that was in effect at the time of the formation of the contract.

■ As defendant notes, actions for damages under Section 1981 are governed by Georgia's two-year limitations period for claims to recover wages. *Mack v. W.R. Grace Company,* 578 F.Supp. 626, 635 (N.D.Ga.1983), *cert. denied,* 469 U.S. 805, 105 S.Ct. 62, 83 L.Ed.2d 13 (1984), *re'hg denied,* 469 U.S. 1077, 105 S.Ct. 578, 83 L.Ed.2d 517 (1984). Although plaintiff alleges that she was denied work as a waitress before 1985, she did not file her complaint in this court until October 6, 1989. Plaintiff's claim that she was not allowed to work as a supervisor in 1986 also arose more than two years before she filed her complaint. Thus, defendant contends that both claims are barred by the Statute of Limitations. As the magistrate explains above, however, plaintiff has successfully plead a continuing violation, since the affidavits of John Kinnelly and Colleen Robinson demonstrate that defendant had a racist employment policy. The continuing violation doctrine applies not only to Title VII, but also to Section 1981. *Chung v. Pomona Valley Community Hospital,* 667 F.2d 788 (9th Cir.1982); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979 (D.C. Cir.1973).

Defendant next argues that plaintiff's claims of failure to promote are barred by the limits of *Patterson,* in which the Court held that "[o]nly where the promotion rises to the level of an opportunity for a new and distinct relation between the employee and the employer is such a claim actionable under Section 1981." *Patterson,* 109 S.Ct. at 2377, 105 L.Ed.2d at 156. Defendant argues that since plaintiff has alleged no facts to establish that a promotion would have resulted in a new employment contract or would have fundamentally altered her employment relationship, her claim must be dismissed.

Plaintiff, however, maintains that she was denied a new contractual relationship by being denied a promotion into a supervisory position. Although plaintiff states in her response that she was denied a promotion from waitress to dining room supervisor, her complaint alleges that she was allowed to take a training course for a supervisory position but that she was not allowed to work as a supervisor. According to the affidavit of Stephen L. Cochran, President of Atlanta Family Restaurants, Inc., the position which plaintiff held was trainee supervisor. . (Cochran Aff., ¶ 4). Certainly a promotion from trainee supervisor to supervisor would not be tantamount to a new and distinct employment relationship. Furthermore, both trainee supervisor and dining room supervisor positions are hourly-paid "working" supervisor jobs. (Cochran Aff., ¶¶ 5 and 6). Thus, despite the increased responsibility and income of a dining room supervisor, he or she continues to wait tables. As defendant points out in its reply, the court which considered the remanded *Patterson* case concluded that a promotion from file coordinator and back-up teller to "Accounting Clerk Intermediate" would not provide the opportunity for a new and distinct relationship with defendant since both positions were compensated on an hourly wage basis at the same location, in the same office, and under the same working conditions. *Patterson v. McLean Credit Union,* 729 F.Supp. 35, 36 (M.D.N.C.1990). Similarly, the promotion allegedly denied plaintiff was from one hourly position to another, in the same restaurant, under the same working conditions. Accordingly, defendant's Motion for Summary Judgment should be GRANTED

as to plaintiff's Section 1981 claims of discriminatory failure to promote.

Finally, defendant argues that plaintiff may not offer evidence of post-formation conduct to support a claim under Section 1981 that defendant refused to offer a contract of employment on non-discriminatory terms. In support of its argument, defendant cites *Dangerfield v. Mission Press*, 50 Fair Employment Practice Cases 1171 (N.D.Ill.1989), (Hart, J.). The *Dangerfield* court held, "If a plaintiff can rely on post-formation conduct to show the employer's state of mind at the time of contracting, and thereby, sue under Section 1981, then *Patterson* is essentially a nullity." *Id.* at 1172. *Dangerfield* was later distinguished by a case out of the same district, however. In *English v. General Development Corp.*, 717 F.Supp. 628 (N.D.Ill.1989) (Duff, J.), the court held as follows: "The *Dangerfield* plaintiff did not plead, unlike Ross [a plaintiff in *English* ], that a practice prohibited by Section 1981 was enforced at the time of their hiring. *Dangerfield* thus does not control the present motion." *Id.* at 631. *English* is similar to the case at bar in that plaintiffs allege that the defendants were unwilling to enter into a non-discriminatory relationship with black persons, and that plaintiff was forced to quit because of defendant's alleged policy.

The Supreme Court in *Patterson* held that a plaintiff could use post-formation conduct "as evidence that a divergence in the explicit terms of particular contracts is explained by racial animus." *Patterson*, 109 S.Ct. at 2376, 105 L.Ed.2d at 155. In order to recover under Section 1981 for problems that arise from the conditions of continuing employment, plaintiff must draw a link between discrimination at the time of contract formation and the harm suffered. *English*, 717 F.Supp. at 632. Since the plaintiffs in *English* received commissions based on sales of persons whom they supervised, that court determined that defendant's policy therefore could have directly reduced plaintiffs' earnings. *Id.* at 630. Likewise, plaintiff in the case at bar contends that defendant maintains a discriminatory policy which resulted in a reduction of her earnings by assigning her to areas of the restaurant without much activity and by failing to promote her.

Accordingly, plaintiff may offer evidence of post-contract formation conduct as evidence of defendant's alleged discriminatory policy in effect at the time she was hired. At trial, plaintiff must demonstrate how post-formation acts are relevant to showing the impetus for discriminatory contractual provisions. *See English*, 717 F.Supp. at 632. Although plaintiff will have a greater burden in proving her Section 1981 claim, she has successfully asserted the claim. Therefore, defendant's Motion for Summary Judgment should be DENIED as to plaintiff's claims under Section 1981 for her discharge and her loss of income during employment.

### RECOMMENDATION

Accordingly, for the foregoing reasons, defendant's Motion for Summary Judgment should be DENIED. Plaintiff filed a timely charge of discrimination under Title VII. In addition, plaintiff has stated a cause of action under Section 1981 for her discharge and her loss of income during employment. Partial summary judgment should be GRANTED, however, as to defendant's allegedly racially motivated denials of promotion since plaintiff has alleged no facts to establish that a promotion to dining room supervisor would have fundamentally altered her employment relationship.

SO ORDERED, REPORTED AND RECOMMENDED, this 18th day of September, 1990.