ORDER
 

 ALAIMO, District Judge.
 

 Plaintiff, Susan A. Clark, has brought the present sexual harassment action, seeking damages under Title VII of the Civil Rights Act of 1964 and state law. Currently before the Court are two motions for summary judgment by Defendant, Johnson Controls World Services, Inc. (‘World Services”). For the reasons stated below, World Services’ motion of January 2, 1996, (Dkt. # 15) concerning the filing of a timely Title VII claim will be DENIED.
 
 [1]
 
 World Services’ second motion of May 2, 1996, (Dkt. #36) concerning numerous other issues involved in this litigation, will be GRANTED.
 

 FACTS
 

 [2]
 

 Pursuant to a contract with the United States Navy, World Services provides fire protection, security, transportation, material support and other services to the Kings Bay Submarine Base. Clark began part-time employment with World Services as a Fire/EMS dispatcher in November of 1988. She was transferred to the position of firefighter in June of 1993. She continued employment in that position until her relationship -with World Services ended in 1994.
 

 This litigation arises from Clark’s claim that she was sexually harassed by a supervisor, named Jerry Jaeobs, at the fire station.
 
 [3]
 
 During Clark’s employment, Jacobs was assistant fire chief under Chief Waymon Rai
 
 *887
 
 ney. Jacobs was the chief officer on duty during the times that Rainey was away from the fire station. While Clark states that Jacobs repeatedly subjected her to harassment, she admits that he did not use his position to adversely affect any of the terms or conditions of her employment. In addition, Clark agrees that Jacobs’ motivation for touching her was solely personal and that his behavior was expressly forbidden by the World Services’ sexual harassment policy.
 
 [4]
 

 On March 11,1994, Clark first complained to World Services’ Human Resources Office about the treatment she received from Jacobs. Once Clark filed her complaint, World Services conducted an investigation of her charges.
 
 [5]
 
 Jacobs was suspended from his job in the initial phase of the investigation. Once the probe of Clark’s complaint was complete, Jacobs was permanently transferred to a job in a building away from the fire station. He was instructed to have no further contact with Clark and prohibited from returning to the fire department. Jacobs was terminated several months later after a second sexual harassment complaint was filed by another female employee. Clark admits that she never had another conversation with Jacobs after she made her March 11 complaint. (Clark Depo. p. 170).
 

 Despite the actions of World Services, Clark took a vacation leave shortly after she filed her complaint. Her leave was scheduled to end on April 10, 1994. On April 7, however, she voluntarily submitted a letter of resignation which stated that she no longer felt comfortable working at the fire station. World Services did not accept Clark’s letter of resignation. Instead, the company asked Clark to take a leave of absence and reconsider her decision to resign. On April 13, 1994, after meeting with Human Resource Manager, Joseph W. Lewis, Clark agreed to a leave of absence. Her target return date was set for July 18,1994.
 

 While she was on leave, Clark once again changed her mind. On July 18, 1994, Clark voluntarily resubmitted her letter of resignation. This time the resignation was accepted by World Services. Clark never returned to her fire fighter position. On August 19, 1994, Clark’s counsel wrote a letter to the Equal Employment Opportunity Commission (“EEOC”) alleging that she had been sexually harassed. On November 8,1994, an investigator from the EEOC sent a letter to Clark stating that additional information was needed before the charge could be processed. Clark complied with the EEOC’s request and returned the required forms in December of 1994. World Services received notice of the discrimination charge on January 19, 1995. Clark received a right to sue letter from the EEOC in June of 1995.
 

 DISCUSSION
 

 I.
 
 Summary Judgment
 

 World Services has moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Summary judgment requires the movant to establish the absence of genuine issues of material fact, such that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c);
 
 Adickes v. S.H. Kress & Co.,
 
 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970);
 
 Lordmann Enterprises, Inc. v. Equicor, Inc.,
 
 32 F.3d 1529, 1532 (11th. Cir.1994). Material facts are only those facts that legitimately affect the legal result of the case.
 
 Anderson v. Liberty Lobby,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 

 
 *888
 
 After the movant meets this burden, “the non-moving party must make a sufficient showing to establish the existence of each essential element to that party’s case, and on which that party will bear the burden of proof at trial.”
 
 Howard v. BP Oil Co., Inc.,
 
 32 F.3d 520, 524 (11th Cir.1994),
 
 citing Celotex Corp. v. Catrett,
 
 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party to a summary judgment motion need make this showing only after the moving party has satisfied its burden.
 
 Clark v. Coats & Clark, Inc.,
 
 929 F.2d 604, 608 (11th Cir.1991). The court should consider the pleadings, depositions and affidavits in the case before reaching its decision. Fed. R.Civ.P. 56(c). All reasonable inferences will be made in favor of the non-movant.
 
 Griesel v. Hamlin,
 
 963 F.2d 338, 341 (11th Cir.1992).
 

 II.
 
 Failure to File a Timely Claim under Title VII
 

 World Services initially alleges that no sexual harassment action can lie in this case since the filing requirements of 42 U.S.C. § 2000e-5(e) have not been met. Section 2000e-5(e)(l) states, “[A] charge [under Title VII] shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred.” The timely filing of a charge with the EEOC is an absolute prerequisite to bringing a Title VII action in federal court.
 
 IMPACT v. Firestone,
 
 893 F.2d 1189, 1196 (11th Cir.1990),
 
 cert. denied,
 
 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 100 (1990).
 

 In support of its argument, World Services asserts that March 19, 1994, should be considered the last day that any discriminatory action could have been taken against Clark since she never reported to work after that date. In addition, it argues that December 12,1994, was the date that her EEOC charge was filed since that is the date on which Clark signed the complaint form that included all the information required by the EEOC. Since the interval between these two date is over 150 days, World Services argues that no Title VII action can be maintained.
 

 This argument, however, ignores the August 19, 1994, letter which Clark’s counsel wrote to the EEOC. Federal regulations provide that a charge of discrimination should contain the following information:
 

 (1) The full name, address and telephone number of the person making the charge
 

 (2) The full name and address of the person against whom the charge is made, if known;
 

 (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices ...;
 

 (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
 

 (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.
 

 29 CFR § 1601.12(a). Most of the information required by section 1601.12(a) was included in Clark’s August letter. Furthermore, any defects in the letter were cured by the EEOC charge of discrimination form signed by Clark on December 12,1994.
 

 EEOC regulations state:
 

 Notwithstanding the provisions of [section 1601.12(a) ], a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verily the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional action which constituted unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received. A charge that has been so
 
 *889
 
 amended shall not be required to be redeferred.
 

 29 QFR § 1601.12(b). The protections of section 1601.12(b) are available for claims filed by attorneys as well as claimants.
 
 Montgomery v. Atlanta Family Restaurants, Inc.,
 
 752 F.Supp. 1575, 1580 (N.D.Ga.1990). In the case at bar, it is clear that Clark’s attorney intended to advance a charge of discrimination. The August letter stated, “The purpose of the affidavit is to initiate a charge of discrimination with your agency.” (Def.’s Mem. in Support of Mot. for Summ.J. of Jan. 2, 1996, Ex. 3). Furthermore, the main defects with the August letter were that it did not identify World Services by its full name and listed her place of employment as the fire department at the Kings Bay submarine base without giving a full street address.
 

 The defects in the August letter were technical and were corrected through later action. As such, section 1601.12(b) requires that August 19, 1994, be considered the date Clark’s charge of discrimination was filed with the EEOC. August 19 was within 180 days of the events of March 1994 that gave rise to this litigation. All acts prior to the March date are not barred as they could form the basis for a continuing violation. The Court finds that Clark’s EEOC charge of discrimination was timely filed. World Services has faded to meet its burden for summary judgment on this issue.
 

 III.
 
 Sexual Harassment Claims
 

 Title VII prohibits discrimination by an employer “against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual’s race, color, religion, sex, or national origin.” 42 U.S.C. § 2000e-2(a)(l) (1994). This prohibition extends to sexual harassment in the workplace.
 
 Henson v. City of Dundee,
 
 682 F.2d 897 (11th Cir.1982).
 

 A
 
 Quid Pro Quo
 

 Clark seeks to recover for
 
 quid pro quo
 
 and hostile work environment sexual harassment.
 
 Quid pro quo
 
 sexual harassment “involves a supervisor’s attempt to garner sexual consideration from an employee by offering job benefits as a quid pro quo.”
 
 Mills v. Amoco Performance Products, Inc.,
 
 872 F.Supp. 975, 989 (S.D.Ga.1994).
 
 Quid pro quo
 
 sexual harassment requires proof that plaintiffs acceptance of the harassment is an express or implied condition to receiving a job benefit or not receiving negative treatment.
 
 Sowers v. Kemira, Inc.,
 
 701 F.Supp. 809, 823 (S.D.Ga.1988) (finding
 
 prima facie
 
 case of
 
 quid pro quo
 
 sexual harassment when plaintiffs rejection of supervisor’s advances resulted in delay of promotion).
 

 In the case at bar, however, no evidence has been presented to indicate that
 
 quid pro quo
 
 harassment has taken place. Clark has admitted that she was never threatened or disciplined while she worked at the fire station. (Clark Depo. p. 110-111). Clark, also agrees that Jacobs did not use his position to affect adversely any of the terms or conditions of her employment and that his motivation for touching her was solely personal. Under the facts of this case, the Court has little trouble in concluding that Clark was not a victim of
 
 quid pro quo
 
 sexual harassment. Not one shred of evidence showing that Jacobs demanded any sort of sexual relations in return for job benefits or penalties has been presented.
 

 B.
 
 Hostile Work Environment
 

 Clark also seeks to recover under the hostile work environment theory of sexual harassment. In order to make out a
 
 prima facie
 
 case of hostile work environment sexual harassment, a plaintiff is required to show (1) membership in a protected group; (2) subjection to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) that the harassment affected a term, condition, or privilege of employment, in that it was sufficiently severe or pervasive “to alter the conditions of [the victim’s] employment and create an abusive working environment,”
 
 Henson,
 
 682 F.2d at 904; and (5) that the company knew or should have known of the harassment and failed to take remedial action.
 
 Huddleston v. Roger Dean Chevrolet, Inc.,
 
 845 F.2d 900, 904 (11th Cir.1988);
 
 Sparks v. Pilot Freight Carriers, Inc.,
 
 830 F.2d 1554, 1557 (11th Cir.1987). An employer can rebut this
 
 prima facie
 
 showing by
 
 *890
 
 “establishing that the events did not take place, or were not sufficiently severe to be actionable, or by pointing to prompt remedial action reasonably calculated to end the harassment.”
 
 Sanchez v. City of Miami Beach,
 
 720 F.Supp. 974, 980 (S.D.FIa.1989).
 

 For the purposes of this motion, World Services does not challenge the first four elements of Clark’s
 
 prima facie
 
 case. Rather, World Services argues that it took prompt remedial action which prevents it from being held liable for Clark’s hostile work environment claims. The Eleventh Circuit has held:
 

 Strict liability is illogical in a pure hostile environment setting. In a hostile environment case, no
 
 quid pro quo
 
 exists. The supervisor does not act as the company; the supervisor acts outside “the scope of actual or apparent authority to hire, fire, discipline, or promote.” Corporate liability, therefore, exists only through
 
 respondeat superior;
 
 liability exists where the corporate defendant knew or should have know of the harassment and failed to take prompt remedial action against the supervisor.
 

 Steele v. Offshore Shipbuilding, Inc.,
 
 867 F.2d 1311, 1816 (11th Cir.1989) (citing,
 
 Henson,
 
 682 F.2d at 905;
 
 Bundy v. Jackson,
 
 641 F.2d 934, 943 n. 8 (D.C.Cir.1981)).
 

 It is difficult for the Court to imagine a quicker or more prompt response to a harassment complaint than the actions taken by World Services in the case at bar. Clark first complained about sexual harassment on March 11, 1994. Jacobs was immediately suspended while an investigation was conducted. At the conclusion of the investigation, Jacobs was transferred to another position where he would not come into contact with Clark. Clark was also permitted to take a leave of absence so that she did not have to return to work until she felt comfortable.
 

 Clark attempts to create a material issue by arguing that she was afraid to file a complaint against Jacobs because she felt that the complaint would not be investigated and that Jacobs would be informed of her actions. However, she has not presented a shred of evidence to suggest that World Services had a practice of not investigating sexual harassment complaints. In addition, Clark’s own complaint was promptly investigated and resolved after it was filed. Under the facts presented, Clark’s argument does not give rise to a genuine issue of material fact.
 

 Clark also attempts to avoid the dismissal of her harassment claims by arguing that Jacobs was acting as an agent for World Services when the harassment took place. The Eleventh Circuit has held, “[I]n so called ‘tangible job detriment’ harassment cases, a supervisory employee acts as an agent of his employer under Title VII when that employee uses the authority delegated to him by the employer to harass the plaintiff.”
 
 Vance v. Southern Bell Tel. and Tel. Co.,
 
 863 F.2d 1503, 1514-1515 (11th Cir.1989),
 
 appeal after remand,
 
 983 F.2d 1573 (11th Cir.1993),
 
 cert. denied,
 
 — U.S. -, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995). For World Services to be directly liable under this theory, Clark would have to show that Jacobs used authority actually delegated to him by World Services to make or threaten to make employment decisions detrimental to Clark.
 
 Id.
 
 at 1515 (citing,
 
 Sparks,
 
 830 F.2d at 1559). Agency theory as a means for direct liability, however, must fail in the case at bar since Clark admits that Jacobs did not use his position to affect adversely any terms of her employment. There is no evidence to indicate that Clark was ever threatened by Jacobs. His actions clearly fall outside the scope of his employment.
 

 Viewing the evidence in the light most favorable to Clark, the non-movant, the Court concludes that World Services took prompt remedial action to resolve the sexual harassment complaint Clark asserted. Summary judgment for World Services will be GRANTED on Clark’s sexual harassment claim.
 

 IV.
 
 Constructive Discharge Claim
 

 Under Title VII, an employee who resigns from a job can recover as if the employee was improperly discharged if the employee’s working conditions were so intolerable that a reasonable person in the em
 
 *891
 
 ployee’s position would feel compelled to resign.
 
 Henson,
 
 682 F.2d at 907. Clark states that she was forced to quit her job because she was afraid of the other fire fighters and Chief Rainey and because she was embarrassed that others found out about her complaint.
 

 Such claims, however, are insufficient to create a genuine issue of material fact in this case. Clark states that her fear was based on the fact that Chief Rainey stared at her during the few shifts she worked after she made the sexual harassment complaint against Jacobs and before she went on vacation. She also claims that some of the firefighters shunned her. Clark may have become uneasy due to the investigation that was taking place. She was granted an extended leave of absence, however, to remedy this problem.
 

 Viewing the evidence in the light most favorable to her, the Court finds that Clark has not shown that her working conditions became intolerable. She had no contact with Jacobs after he was told to stay away from her and from the fire department. She does not allege that her job was affected in any way. Summary judgment for World Services will be GRANTED on Clark’s claim for constructive discharge.
 

 V.
 
 Retaliatory Discharge Claim
 

 Clark has also asserted that she was discharged in retaliation for her complaint against Jacobs. However, in order for a Plaintiff to prove retaliation, she must show as part of her
 
 prima facie
 
 case that an adverse employment action occurred.
 
 Coutu v. Martin County Bd. of County Comm’rs,
 
 47 F.3d 1068, 1072 (11th Cir.1995). The Court has already determined that Clark was not constructively discharged. As there has been no other allegation of an adverse employment action, Clark’s claim must fail as a matter of law. World Services motion for summary judgment on this issue will be GRANTED.
 

 VI.
 
 State Law Claims
 

 Clark has also alleged numerous state law claims against World Services. Since the federal issues pending in this litigation have been disposed, the Court believes that the remaining state law issues should be left to the courts of Georgia. The Court declines to retain discretionary supplemental jurisdiction over the remainder of this case.
 
 See
 
 28 U.S.C. § 1367(c)(3).
 

 CONCLUSION
 

 The Court has determined that, while Clark’s claims of sexual harassment are not time barred, they are, nevertheless, not actionable under Title VII of the Civil Rights Act of 1964. Accordingly, World Services’ motion of January 2, 1996 is DENIED. Its second motion for summary judgment of May 2, 1996, is GRANTED. All state law claims are DISMISSED WITHOUT PREJUDICE.
 

 . The facts of this case, unless otherwise indicated, are gleaned from World Services’ January 2, 1996, statement of material facts and conclusions of law, to which no genuine issue exists and from Clark’s opposition statement. The opposition statement is contained in Clark’s January 30, 1996, response to World Services’ first motion for summary judgment. Similar statements were not included with World Services’ second motion or Clark’s response.
 

 [1]
 

 . This motion also argued that World Services is entitled to summary judgment with respect to the state law battery claim asserted by Clark. The propriety of summary judgment on this issue, however, was reasserted by World Services in its second motion for summary judgment.
 

 [3]
 

 . Clark asserts that Jacobs would request hugs, sing songs with sexually explicit lyrics, and slap the restroom door while she was inside. She also states that he rubbed his hands on her back and legs on several occasions. Finally, she states that on at least one occasion, Jacobs placed his hand under her shirt. However, this action appears to have happened only after Clark agreed to sit on Jacobs’ lap to listen to his problems. (Clark Depo. p. 104).
 

 This case does not state a claim for discrimination in employment duties and conditions. Clark has admitted that she can not recall an instance where male and female fire fighters were treated differently in their job duties. (Clark Depo. p. 68). Additionally, she has stated that she cannot remember ever being denied the opportunity to do a job, a phase of a job, or anything related to her job.
 
 Id.
 
 Clark’s contradictoiy and unexplained statement in her May, 1996, affidavit does not create a genuine issue of material fact.
 
 See Clay v. Equifax, Inc.,
 
 762 F.2d 952, 955 n. 3 (11th Cir.1985) (quoting,
 
 Van T. Junkins and Associates, Inc. v. U.S. Industries Inc.,
 
 736 F.2d 656, 657 (11th Cir.1984)).
 

 [4]
 

 . Recently, Clark has stated that World Services did not have a sexual harassment policy until after she left her position in April of 1994. (Clark Aft. of May 15, 1996 ¶ 7). Clark's statement, however, is contradicted by her own words. On the last two lines of page five of her memorandum of May 22, 1996, in opposition to World Services' motion for summary judgment, Clark admits that she was aware of the sexual harassment policy that was in effect during the period of her employment. A similar admission was made in paragraph 14 of Clark’s affidavit of Januaiy30, 1996.
 

 [5]
 

 . The facts in this paragraph concerning World Services’ investigation of Clark’s complaint are taken from pages five and six of World Services' memorandum in support of its May 2, 1996, motion for summary judgment. Clark has not made a filing which discusses this subject matter. In addition, Clark has never indicated that she contests these facts as they have been presented by World Services.